JOHNSON v VALLEY GREY IRON FOUNDRY

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—LAST EM-
   PLOYERS.

   The total compensation due for a dust disease is recoverable from
   the employer who last employed the employee in the employ-
   ment to the nature of which the disease was due and in which
   it was contracted; the employee must proceed against the last
   employer (MCLA 418.435).

2. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—TIME OF IN-
   JURY—LAST EMPLOYERS.

   The time of injury for an occupational disease is the last day of
   work in the employment in which the employee was last
   subjected to the conditions resulting in disability or death
   (MCLA 418.301).

3. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—FORMER EM-
   PLOYERS—REDEMPTION AGREEMENTS—LAST EMPLOYERS—APPOR-
   TIONMENT OF LIABILITY.

   An employer has no liability to a former employee for an occupa-
   tional disease where the employer is not the last employer in
   the employment to the nature of which the disease is due;
   therefore, a redemption agreement between an employee and
   his former employer did not bar either the employee's claim for
   an occupational disease against his last employer or the last
   employer's claim for apportionment of liability against the
   former employer; the redemption agreement did bar any claim
   by the employee against his former employer for other alleged
   injuries.

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATIONS—LEG-
   ISLATURE.

   The Legislature may make classifications of persons provided
   such classifications are based on substantial distinctions and
   are in accord with the aims sought to be achieved; however, the

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 58 Am Jur, Workmen's Compensation §§ 252, 342.
[4] 16 Am Jur 2d, Constitutional Law §§ 494, 495.

classifications must be neither arbitrary nor capricious but must rest on reasonable and justifiable foundations.

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 3 December 10, 1974. (Docket No. 19612.) Decided February 12, 1975. Leave to appeal denied, 394 Mich 769.

Claim by Elwood Johnson against Valley Grey Iron Foundry and United States Fidelity and Guaranty Company for workmen's compensation. Saginaw Foundries and American Mutual Liability Company were joined as defendants. Limited award of compensation reversed by the Workmen's Compensation Appeal Board, which granted full compensation. Saginaw Foundries and American Mutual Liability Company appeal by leave granted. Affirmed.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.,* for plaintiff.

*Smith & Brooker, P. C.* (by *A. T. Lippert, Jr.),* for Valley Grey Iron Foundry and United States Fidelity and Guaranty Company.

*Conklin, Benham, McLeod, Ducey & Ottaway, P. C.* (by *Thomas P. Chuhran),* for Saginaw Foundries and American Mutual Liability Insurance Company.

Before: BRONSON, P. J., and MCGREGOR and CARLAND,* JJ.

CARLAND, J. Elwood Johnson, plaintiff-appellee, was 65 years old at the time of the hearing and had been employed by Saginaw Foundries, defend-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant-appellant, hereinafter referred to as Saginaw, from July 1951 to May 5, 1969, and employed by Valley Grey Iron Foundry, defendant-appellee, hereinafter referred to as Valley, from May 7, 1969 to October 3, 1969.

Plaintiff's primary jobs with Saginaw were those of a furnace helper, ladle man and grinder. Plaintiff testified that while so employed the atmosphere within Saginaw's plant was contaminated with dust and smoke. In 1968 plaintiff noticed a shortness of breath. When plaintiff began to cough up black phlegm, he sought medical treatment from his family physician. On three occasions in 1968, plaintiff was hospitalized for his respiratory ailments. Shortly after being discharged from the hospital the last time for such ailment, Saginaw's plant was destroyed by fire and plaintiff was assigned to a cleanup job.

On May 5, 1969, the last day of work for Saginaw, plaintiff suffered a groin injury when a grinding wheel which he was operating exploded. He was off work one day and on May 7, 1969, he became employed by Valley. At Valley he encountered the same atmospheric conditions as at Saginaw. He began to cough yellow phlegm at night until finally, being unable to work because of the smoke and dust, he quit on October 3, 1969. Plaintiff was thereafter employed as a janitor at Saginaw High School until June 30, 1971.

On or about August 27, 1970, plaintiff filed a petition for hearing with the Bureau of Workmen's Compensation against Saginaw and Valley, alleging an injury to the groin on May 5, 1969, and alleging a disability of the chest, throat, lungs and related conditions as the result of exposure to unusual and excessive amounts of dust, smoke, fumes and related work environment at both Saginaw and Valley.

Thereafter, on October 27, 1971, a hearing was held before Referee Nolan for the purpose of discussing a proposed redemption of plaintiff's claim against Saginaw. Both plaintiff and Saginaw and its insurer American Mutual Liability Company participated in this hearing. Although Valley was represented by counsel at this hearing, it took no part therein.

During the course of the hearing, the referee elicited from plaintiff the fact that he, the plaintiff, understood that he was settling all claims which he might have against Saginaw.

> *"Referee:* Now as to what's going to happen to Valley Grey Iron Foundry and what you claim you are entitled to there, is something that will have to be tried; but what you are redeeming is your Saginaw Foundry case. Do you understand that?
>
> *"A. [plaintiff]:* Yes.
>
> *"Referee:* That's where the grinding wheel exploded?
>
> *"A.* Yes.
>
> *"Referee:* It hit you in the groin?
>
> *"A.* Yes.
>
> *"Referee:* If you have any chest problems as a result of the Saginaw Foundries employment or any back trouble or anything else, that is all wiped out. Do you understand that?
>
> *"A.* Yes, I understand that.
>
> *       *       *
>
> *"Referee:* Well, all right. Do you understand what that is? You are gambling on what might happen here. If we have a case against Valley Grey Iron and if I decide that all your problems came from the work over at Saginaw Foundries, then there is not going to be much we can do for you and your case against Valley Grey Iron. Do you understand that?
>
> *"A.* Yes.
>
> *"Referee:* On the other hand, if I should find that

there could be some connection, then you might get more money; but, you know you are gambling on this?

"*A.* (No response.)

"*Referee:* You are settling off with one company.

"*A.* Well, what do you mean about gambling?

"*Referee:* There is no guarantee that when you come to try a lawsuit, as your attorney has explained to you, there is no guarantee that you are going to win. You were with Valley Grey Iron for five months or something like that?

"*A.* Yes.

"*Referee:* And to try and make them pay for all of the things that happened to you while you worked for 18 years over at Saginaw Foundries, you may be able to do it, but then on the other hand, you may not."

It is clear from the foregoing that the plaintiff was advised by the referee that he was settling his claims against one company only (Saginaw). He was further advised that if he failed in his claim against Valley, that he could recover nothing further against Saginaw. He was not advised, however, that if he received an award against Valley, such award would be reduced by virtue of the terms of the proposed redemption agreement.

It clearly appears from the redemption hearing record that all parties were fully aware of the position taken by the other parties. Saginaw was told in no uncertain terms by plaintiff's attorney that since Saginaw was not plaintiff's last employer, plaintiff was making no claim against it for compensation as a result of the dust disease, but that plaintiff intended to proceed against Valley as to this portion of his claim. Plaintiff was also aware that it was Saginaw's position that the redemption would prevent it from becoming liable for any apportionment or contribution in the event of an award against Valley. All parties were advised they were gambling as to the legal effect of

the redemption agreement. It would therefore seem that since the parties were patently in disagreement as to the legal effect of what they were doing, that when the agreement was signed and the money paid, all parties thereby said "we are willing to take our chances". The referee approved and the plaintiff signed the following agreement:

"Plaintiff offers and agrees to settle any and all claims for compensation benefits and all past, present and future medical, surgical and hospital expenses, under the provisions of the Michigan Workmen's Compensation Act, by way of a redemption of liability for injuries to his back, head, legs, groin, extremities, lungs, heart, neurosis and all related problems, in the amount of $4,000.00."

On the day following the redemption hearing, Valley moved to join Saginaw and its insurer as parties defendant pursuant to MCLA 418.435; MSA 17.237(435) "so that proper apportionment pursuant to the Workmen's Compensation Act can be made". The motion was granted over Saginaw's objection.

A full compensation hearing was held December 15, 1971. The only witness was the plaintiff who testified to occupational disability because of exposure to dust and other irritants over a long period of time. The referee found the plaintiff to be disabled and fixed benefits at $74 per week. He further stated that he would normally apportion such award between the two employers in direct proportion to the length of time the employee was employed by each of the defendants. On this ratio 212/217 of the benefits would be paid by Saginaw and 5/217 would be paid by Valley. However, the referee further decided that plaintiff's redemption acted to vitiate any derivative liability of Saginaw

and would prevent apportionment. Valley was then ordered to pay as an award the sum of $1.70 per week.

The plaintiff immediately appealed this decision to the Workmen's Compensation Appeal Board which reversed the referee by a three to two vote. The majority holding that the statute allowed plaintiff to seek and obtain full recovery from his last employer despite the redemption agreement. Saginaw sought and obtained leave to appeal.

This appeal raises issues novel to Michigan and so far as we are able to discover, novel to all other jurisdictions as well. The briefs of the parties cite virtually no authority to support the positions taken by them, and none appear to exist. Essentially, this case must turn upon our answer to the question as to the effect of the redemption agreement entered into pursuant to statute when we consider the provisions of MCLA 418.435; MSA 17.237(435).

At the time of the filing of this claim, Saginaw was faced with two possible liabilities. First a possible direct liability to plaintiff arising from the groin injury and second, a possible derivative liability of contribution to Valley in the event of an award against Valley. Hence, the essential question which must be answered on this appeal is did the redemption agreement settle both the direct and the derivative liability? The real quarrel between the parties is whether the phrase "any liability" in the redemption statute[1] refers to only direct liability or to derivative liability as well.

As used in the act, "any liability" does not necessarily mean that only all liability may be settled. It would seem that a sensible construction of the phrase is that any liability which the par-

---

[1] MCLA 418.835; MSA 17.237(835).

ties wish to settle may be settled. In *Wehmeier v W E Wood Co,* 377 Mich 176; 139 NW2d 733 (1966), the Court found the clear intention of the parties was to close out all of defendant's liability. Here it would seem that such clear intention cannot be found from the redemption record.

The dust disease apportionment statute reads in relevant part:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If any dispute or controversy arises as to the payment of compensation or as to liability therefor, the employee shall give notice to and make claim upon the last employer only and apply for a hearing against the last employer only." MCLA 418.435; MSA 17.237(435).

Judicial construction of this statute is unanimous in holding that the employee "must" proceed against the last employer, *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963); *Trellsite Foundry & Stamping Co v Enterprise Foundry,* 365 Mich 209; 112 NW2d 476 (1961); *Aseltine v Leto Construction Co,* 43 Mich App 559; 204 NW2d 262 (1972).

"The party responsible for the employer's liability on the last day of work in the employment in which the employee was last subjected to the condition resulting in disability must be charged with payment of the compensation accruing." *Aseltine, supra,* p 561.

The entire structure of the act seems to contemplate the imposition of liability upon a single employer. MCLA 418.401; MSA 17.237(401) reads as follows:

"(a) 'Disability' means the state of being disabled from earning full wages at the work in which the employee was last subject to the conditions resulting in disability.

"(b) 'Disablement' means the event of becoming so disabled.

"(c) 'Personal Injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable. A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer."

The act first sets up a specific "time of injury" for an occupational disease which will be "the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death". MCLA 418.301; MSA 17.237(301).

The most reasonable interpretation of the act is that the Legislature intended to give the plaintiff a single direct action against only his last employer. Therefore, insofar as the occupational disease of plaintiff is concerned, Saginaw had no liability to plaintiff. Valley was liable in whole to plaintiff and its liability was not affected by plaintiff's redemption agreement with Saginaw. Neither could Valley's rights to contribution from Saginaw be affected by an agreement to which it was not a party. This being so, only Saginaw's direct liability for the groin injury was redeemed. At the time of the redemption hearing, this was understood by the plaintiff, by the referee and was at least contemplated by Saginaw's counsel since he felt that he could, as the referee stated, "wipe out the last

employer". We agree with the finding of the appeal board that

"The redemption agreement entered into between plaintiff and defendant Saginaw Foundries prior to the joinder of Saginaw Foundries as a party defendant by the last employer Valley Grey Iron Foundry, which agreement redeemed all liability of Saginaw Foundries to plaintiff, does not bar plaintiff's action against the last employer or the last employer's action against Saginaw Foundries since no liability for the dust disease exists directly between defendant Saginaw Foundries and the plaintiff. The redemption agreement does bar any action which plaintiff may have had against Saginaw Foundries as a result of his other alleged injuries."

We find no merit to Saginaw's due process or equal protection argument. Saginaw is not here required to pay twice nor is plaintiff receiving double compensation for the same injury. The plaintiff had two claims and Saginaw has redeemed its liability for the groin injury only. Plaintiff's claim against Valley was not affected by the redemption. The equal protection argument fails because the factual situation does not meet the legal arguments. The equal protection rule is stated in *Fox v Employment Security Commission,* 379 Mich 579, 589; 153 NW2d 644 (1967), where the Court states:

"It is well recognized that the legislature may make classifications of persons, provided such classifications are based on substantial distinctions and are in accord with the aims sought to be achieved. (Citing cases). However, such classification must be neither arbitrary nor capricious, but must rest on reasonable and justifiable foundations. In *Haynes v Lapeer Circuit Judge* [201 Mich 138, 141–142; 166 NW 938 (1918)], the rule is stated:

" 'Legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation.' "

In this case Saginaw complains not because it is treated unlike other members of its class but because it is treated exactly like every member of its class, i.e., that because it is required to pay its pro rata share of expenses, Saginaw wants to be placed in a separate category and treated differently because it has made a redemption settlement. It argues in effect that to treat persons differently situated equally is a denial of equal protection. There is no question of due process because Saginaw received notice and participated in the hearing.

None of the other issues argued by the appellant were raised before the appeal board and were therefore not preserved in this appeal.

The decision of the Workmen's Compensation Appeal Board is affirmed.