BEARDSLEE v MICHIGAN CLAIM SERVICES, INC

Docket No. 48016. Submitted October 21, 1980, at Detroit.—Decided
     February 4, 1981. Leave to appeal applied for.

     Lawrence A. Beardslee was injured on the job and filed a claim
     for workers' compensation benefits. The parties attempted to
     obtain approval of a settlement, but the administrative law
     judge rejected it. A redemption was later approved and a
     release executed releasing his employer, Casualty Reciprocal
     Exchange (the employer's workers' compensation insurer),
     Michigan Claim Services, Inc. (Casualty Reciprocal's agent for
     workers' compensation claims) and their agents. Lawrence
     Beardslee and his wife, Linda M. Beardslee, brought an action
     in the Wayne Circuit Court against Casualty Reciprocal, Michi-
     gan Claim Services, Fred Nicoll, an agent of Michigan Claim,
     and Beardslee's employer. The complaint alleged that Michigan
     Claim had medical information proscribing Beardslee's return
     to work. Despite such information, it was alleged, Michigan
     Claim via its agent, Fred Nicoll, urged Beardslee to ignore the
     pain in his injured knee and return to work. He claimed to
     have relied upon Nicoll's advice, returned to his former job and
     suffered further injury to his knee resulting in total and
     permanent disability. In addition, Linda Beardslee claimed loss
     of consortium. The court, Joseph G. Rashid, J., granted acceler-
     ated judgment. Plaintiffs' appeal by leave granted was dis-
     missed for failure to secure a transcript. Plaintiffs sought leave
     to appeal to the Supreme Court. The Supreme Court remanded
     to the Court of Appeals for reinstatement of the appeal, 407
     Mich 896 (1979). *Held:*

     1. The section of the Worker's Disability Compensation Act
     permitting redemption of liability six months after the injury
     permits the settlement of any liability, including liability for
     claims not arising out of the act.

     2. A wife's right of action for loss of consortium as a result of

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 459 *et seq.*
[2] 82 Am Jur 2d, Workmen's Compensation § 463.
[3] 41 Am Jur 2d, Husband and Wife §§ 457, 458.
     81 Am Jur 2d, Workmen's Compensation § 61.

the injury of her husband is independent of any right of action of her husband in tort.

Affirmed in part and reversed in part.

1. WORKERS' COMPENSATION — REDEMPTION.

The construction of redemption agreements is governed by the same rules as other settlements; the intent of the parties to a release, expressed in the terms of the agreement, governs the scope of the release.

2. WORKERS' COMPENSATION — REDEMPTION — STATUTES.

The section of the Worker's Disability Compensation Act permitting redemption of liability six months after the injury permits the settlement of any liability, including liability for claims not arising out of the act (MCL 418.835; MSA 17.237[835]).

3. ACTIONS — LOSS OF CONSORTIUM — TORTS.

A wife's right of action for loss of consortium as a result of the injury of her husband is independent of any right of action of her husband in tort.

*Thomas F. Brill* and *E. R. Whinham,* for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Ivin E. Kerr* and *Mark D. Willmarth),* for defendant Casualty Reciprocal Exchange.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *D. J. Watters* and *Christine D. Oldani),* for defendants Michigan Claim Services, Inc., and Fred Nicoll.

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

M. J. KELLY, J. Plaintiffs appeal an April 3, 1978, order of the Wayne County Circuit Court which granted defendants' motion for accelerated judgment brought pursuant to GCR 1963, 116.1(2) and (5). In its order, the lower court focused upon

* Circuit judge, sitting on the Court of Appeals by assignment.

subsection (5) of the rule and granted the disputed order because of a release of all claims signed previously by plaintiff Lawrence Beardslee.

The issue raised in this appeal is the effect of a release entered within the ambit of a workers' compensation settlement. The facts are essentially undisputed. On January 7, 1975, plaintiff Lawrence Beardslee injured his leg in the course of his employment at Gell's Sporting Goods. The plaintiff then filed a claim for workers' compensation benefits. Sometime before December 31, 1976, the parties attempted to obtain approval of a settlement before the administrative law judge, who rejected it. Thereafter a hearing to approve the redemption was conducted by affidavit on January 6, 1977, and the redemption was approved. The supporting documents contained an affidavit signed by Lawrence Beardslee and notarized by his attorney, Thomas F. Brill, on December 31, 1976. In addition, it contained a separate release signed and notarized in the same manner, purportedly on the same date, which we quote in part:

"RELEASE

"That, in consideration of consent to the Agreement to redeem liability under the Workers' Disability Compensation Act, I hereby forever release and discharge Robert Gell, Lester Gell, Alvin Strom, Gell's Sporting Goods, Casualty Reciprocal Exchange (Dodson Insurance Group), Michigan Claim Service, and their agents, attorneys and their employees, of and from any and all liabilities, causes of action, damages, claims, and demands, of whatsoever kind or nature, and particularly from any and all their actions and statements in the proceedings, investigation and disposition of any and all of my claims under the Workers' Disability Compensation Act."

At the January 6, 1977, hearing, the settlement

and release were approved by the administrative law judge. The attorneys for the parties have similar names which might confuse the unwary. We quote from the transcript the following discussion:

"*THE JUDGE:* Call the case of Lawrence A. Beardslee against Robert Gell, Lester Gell, Alvin Strom and Gell's Sporting Goods.

"Will the attorneys identify themselves?

"*MR. BRILL:* Thomas Brill for the Plaintiff.

"*MR. BARIL:* John Baril for the Defendants.

"Your Honor, I don't know if the proposed redemption order mentions it, but the weekly rate of $118 should be paid through the appeal period.

"*THE JUDGE:* I have previously reviewed this file for redemption purposes, and at that hearing I denied the redemption on the grounds that I did not believe it was in the best interests of the Plaintiff to settle his case that way at that time for that amount of money.

"The case comes before the Department today, and I am otherwise satisfied with the contents of the file.

"Mr. Brill, what do you advise me about the settlement of this gentleman's case?

"*MR. BRILL:* The matter was discussed with him thoroughly, and he found it necessary to go back to Florida where he is now. He is completely satisfied, and if you recall, Your Honor, there was a problem last time with the matter of releases to all parties. He has now decided to release all parties, and he wishes the redemption to go through. What he intends to do with the funds is to complete his education. It will take just a little bit of work by his wife to pay for his entire college education, and he feels satisfied that with the ·education he will have rehabilitated his earning capacity.

"*THE JUDGE:* Mr. Baril?

"*MR. BARIL:* I have nothing to add, Your Honor. Mr. Brill was kind enough last time to indicate that he was waiving or releasing any personal claim he might have against Michigan Claims Service, Incorporated, and the

Defendants for tortious conduct in the handling of this case, and I request that he indicate that again.

"*MR. BRILL:* Yes, I personally release Michigan Claims Service for any defamation of character which I had indicated they might be responsible for in the past.

"*THE JUDGE:* I'm satisfied with the contents of the file, the medical reports, the affidavit, the amount involved, and accordingly, I approve."

On December 22, 1977, plaintiffs filed the instant complaint, naming as defendants the plaintiff's employer, Casualty Reciprocal Exchange (the employer's workers' compensation insurer), Michigan Claim Services (Casualty Reciprocal's agent for workers' compensation claims) and Fred Nicoll (agent for Michigan Claim). The employer for reasons not completely clear, is not a party to this appeal. The complaint alleged receipt by Michigan Claim of medical information proscribing Lawrence Beardslee's return to work. Despite such information, it was alleged, Michigan Claim, via its agent Fred Nicoll, urged Beardslee to ignore the pain in his injured knee and return to work. He claimed to have relied upon Nicoll's advice, returned to his former job and suffered further injury to his knee resulting in total and permanent disability.

Plaintiffs' initial appeal as of right was dismissed by an order of this Court dated July 7, 1978, for failure to secure a copy of the lower court transcript. Plaintiffs' subsequent application for delayed appeal was denied in an order dated May 17, 1979. Pursuant to the plaintiffs' later application for leave to appeal filed with the Supreme Court, we have been directed to reinstate and consider the plaintiffs' original appeal as of right. *Beardslee v Michigan Claims Services, Inc,* 407 Mich 896 (1979).

The issue is whether a release signed in conjunction with a workers' compensation redemption agreement can be effective to bar a subsequent non-compensation-related cause of action brought by the claimant who signed the release. The terms of the instant release and the transcript of the administrative hearing in which it was approved indicate that Beardslee and his attorney, at the time the release was signed, knew of the alleged misrepresentations and contemplated the effect of the release to extinguish claims arising therefrom. The plaintiffs do not claim otherwise on appeal.[1] Rather, it is argued that the release is invalid with respect to the non-compensation claims because of a lack of consideration and because enforcement of the release to bar the plaintiffs' non-compensation claims would violate public policy.

We have found no prior Michigan cases addressing this specific issue. However, as a general rule, the construction of redemption agreements is governed by the same rules as other settlements. *Miller v City Ice & Fuel Co,* 279 Mich 592; 277 NW 196 (1937). Further, the intent of the parties to a release, expressed in the terms of the agreement, governs the scope of the release. *Grzebik v Kerr,* 91 Mich App 482, 486; 283 NW2d 654 (1979).

Section 835 of the Worker's Disability Compensation Act, MCL 418.835; MSA 17.237(835), provides that, six months after the date of an injury, any liability resulting therefrom may be redeemed by payment of a lump sum to the claimant. In *Johnson v Valley Grey Iron Foundry,* 58 Mich App 574, 580-581; 228 NW2d 469 (1975), this Court set forth the following interpretation of § 835:

---

[1] This is not a claim situation of mutual mistake of fact as in *Solo v Chrysler Corp,* 406 Mich 240; 277 NW2d 629 (1979), and there can be no claim of fraud because the alleged misrepresentation of the claims agent was obviously and openly the subject of the release.

"As used in the act, 'any liability' does not necessarily mean that only all liability may be settled. It would seem that a sensible construction of the phrase is that any liability which the parties wish to settle may be settled."

See also *Stimson v Michigan Bell Telephone Co,* 77 Mich App 361, 364, fn 2; 258 NW2d 227 (1977).

Although *Johnson* and *Stimson* did not involve redemptions purportedly waiving actions for recovery on claims not arising under the act, the cases at least suggest a wide view of the scope of releases generally.

The Louisiana case of *Meinerz v Treybig,* 245 So 2d 557, 559 (La App, 1971), involved issues almost identical to those raised here. In *Meinerz,* plaintiff had entered into a court approved settlement of his workmen's compensation claim with his employer and the insurance carrier, waiving all claims under the workmen's compensation act and any and all other laws. Plaintiff then sought recovery against his employer and the insurer for a separate tort. The Louisiana court's language analyzing plaintiff's claim is instructive:

"The first question is whether the compromise of the tort claim is illegal and against public policy. Plaintiff argues that the settlement was made under LSA-R.S. 23:1271-23:1274, which authorizes only compromises between employer and employee of disputes arising under the Workmen's Compensation Act. He contends that since the act does not permit the inclusion of a tort settlement in the compensation settlement, the parties had no authority to use this procedure to settle the tort claim. Furthermore, plaintiff says that since LSA-R.S. 23:1101 expressly reserves to the injured employee the right to proceed in tort against third persons responsible for the accident, it is against public policy to allow the employer or its insurer to include a tort compromise in a workmen's compensation settlement.

"Counsel have not cited, nor have we found, a Louisiana case which considers the question. Defendants cite the jurisprudence that compromises to avoid litigation are favored in the law. * * * Furthermore, the general rule is that courts will not declare a contract void as against public policy in the absence of an express legislative or constitutional prohibition or a clear showing that the purpose of the contract contravenes good morals or public interest. * * * In the present case, there is no express statutory or constitutional prohibition against combining a workmen's compensation settlement and a tort compromise. Also, there is no jurisprudence holding such a settlement is against the public interest. There is no good reason to prohibit the combination of such settlements when the same purpose could easily be accomplished by drafting the compensation settlement and tort settlement on two separate sheets of paper. We conclude the compromise agreement is not void as against public policy."

The *Meinerz* court also rejected the plaintiff's argument that the compromise of the tort claim was void for lack of consideration. It found that part of the settlement money was paid to settle the tort claim and lumped in with the workers' compensation claim settlement. In the present case, a specific redemption proposal was early on rejected by the administrative law judge which did not contain the release in question, and which was for a lesser sum. We conclude that part of the $25,000 paid to the plaintiff, although not specifically identified or severable, was sufficient legal consideration to liquidate the plaintiffs' potential court claim.

Although the Michigan cases submitted by the parties are not on all fours, the case of *McElmurry v Nine,* 89 Mich App 290, 292; 279 NW2d 301 (1979), adverts to a similar claim of lack of consideration wherein the court held as follows:

"Lastly, plaintiff's suggestion that the release was unenforceable for lack of consideration is without merit. The settlement of the parties' respective disputed claims furnishes good consideration. 6 Michigan Law & Practice, Contracts, § 58 p 319. See also MCL 566.1; MSA 26.978(1)."

We recognize the weakness of this precedent in the workers' compensation field, but certainly under MCL 418.827; MSA 17.237(827) an employee has a right to settle claims against tortfeasors. When the identity of the alleged tortfeasors and those who would be liable under a workers' compensation claim are identical or substantially the same, or even arguably interrelated, we can see no reason why all liability cannot be settled in one transaction. A workers' compensation redemption agreement accompanied by a release of all claims against potential tortfeasors would certainly not be invalidated as to the employer and its workers' compensation insurance carrier. Plaintiff has submitted no valid legal precedent which would require the invalidation of the settlement against the alleged tortfeasors contained in a separate instrument which recited as consideration the parties' consent to the agreement to redeem. We hold that the scope of a transaction which embraces redemption agreements for workers' compensation actions and settlement of potential claims against tortfeasors is not limited to the settlement of claims for injuries "arising out of and in the course of employment". MCL 418.301; MSA 17.237(301).[2] The parties may also agree to settle

[2] In a recent decision, *Copelin v Reed Tool Co*, 596 SW2d 302, 304 (Tex Civ App, 1980), the Texas appellate court addressed a case bearing some factual similarity to our own. The *Copelin* court also discussed the holding in a prior decision of the Texas Supreme Court:

"In the recent Supreme Court decision of *Whittlesey v Miller*, 572 SW2d 665 (Tex, 1978), the Court dealt with the question of 'whether one spouse has an independent action for loss of consortium as a

ancillary claims not covered by the exclusive remedy provisions of the act. In this case, the language of the agreement to redeem is clear. The language of the release is equally clear. The negligent acts of defendants for which recovery is sought were expressly waived in the redemption proceeding and expressly released in the instrument quoted at the beginning of this opinion and voluntarily agreed to by plaintiff Lawrence A. Beardslee. To the extent his wife's claim is derivative and relies upon losses caused by the original injury, it is likewise extinguished. *Lone v Esco Elevators, Inc,* 78 Mich App 97; 259 NW2d 869 (1977), *Haddad v Justice,* 64 Mich App 74; 235 NW2d 159 (1975), MCL 418.131; MSA 17.237(131).

---

result of physical injuries caused to the other spouse by the negligence of a third party.' *Whittlesey v Miller, supra* at 665. In that case, respondent and her husband were involved in a collision with a vehicle driven by petitioner. Respondent's husband and petitioner entered into a settlement agreement wherein respondent's husband released petitioner from liability for injuries he sustained in the accident. After holding that both spouses have a cause of action for intentional or negligent impairment of the marital relationship resulting in loss of consortium, the Court further held that such a tort action was for the 'distinct damages to the emotional interests' of the deprived spouse. The Court further stated:

" 'It is clear that a recovery for personal injuries in Texas, other than that for loss of earning capacity, is the separate property of that spouse.'

"*Id.,* at 669. Finally, the Court addressed the petitioner's contention that the settlement agreement entered into by respondent's husband and petitioner barred respondent's action. *The Court held that the respondent's separate and independent claim could not be forfeited by her husband unless she had granted him the authority to do so.* * * * Similarly, the separate property rights of the non-employed spouse cannot be forfeited by the employment of the other spouse by an employer who is a subscriber to workers' compensation insurance. Thus, the respondent's cause of action for damages due to loss of consortium is not barred by the Act even if her husband's cause of action for his separate and distinct injuries is barred." (Emphasis added.)

By this holding the Texas intermediate court impliedly suggests that a sufficiently broad release, entered into by plaintiff or with her approval, could effectively bar claims for injuries whether compensable under the act or not.

Since she did not sign the release and was not a party to the redemption proceedings, however, that portion of the wife's claim for loss of consortium based upon the claim of fraud is not barred. See *Montgomery v Stephan,* 359 Mich 33; 101 NW2d 227 (1960), finding valid a wife's claim for loss of consortium, independent of her spouse's claim for the principal injury.

Affirmed in part and reversed in part. No costs, neither party having fully prevailed.