The COUNTY OF OAKLAND, By George W. KUHN, the Oakland County Drain Commissioner, Alice L. Schoenholtz, David Snyder, and all other persons similarly situated who are end users of the Detroit Sewage System, Plaintiffs,

v.

VISTA DISPOSAL, INC., Defendant,

and

The United States of America, Auxiliary Defendant.

Civ. No. 86–74656.

United States District Court, E.D. Michigan, Southern Division.

Feb. 3, 1995.

Robert P. Hurlbert, Dickinson, Wright, Moon, Van Dusen & Freeman, Bloomfield Hills, MI, for Alice Schoenholtz.

Philip G. Tannian, Tannian & Assoc., Detroit, MI, James I. Rubin, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Oakland Cty.

Kenneth M. Zorn, Reynolds, Beeby & Magnuson, P.C., Detroit, MI, for Charles Beckham.

## MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' MOTION TO REOPEN PROOFS AND DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND DENYING UNITED STATES' MOTION TO STRIKE

GADOLA, District Judge.

After the conclusion of the bench trial on the claim by Oakland County against the United States in the above-captioned action, the United States filed three motions with the court. The first is a motion to reopen proofs to include a settlement agreement discovered by the United States after the completion of the trial. The second is a motion for summary judgment based upon the set-

tlement agreement. The third is a motion to strike Oakland County's supplemental brief in opposition to the United States' motion for summary judgment.

## I. Facts

In December 1983, Darralyn Bowers, Sam Cusenza, and Joseph Valentini were convicted by a jury in criminal action 83–60070 of conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* The defendants were part of a conspiracy to obtain sludge disposal contracts from the City of Detroit.

### A. *Case No. 84–71068*

In 1984, Oakland County filed a civil RICO lawsuit, case no. 84–71068, seeking damages Oakland allegedly suffered from overinflated prices charged by the City of Detroit as a result of the conspiracy involving Bowers, Cusenza and Valentini and others. The complaint also sought damages for violations of the Sherman Act, 15 U.S.C. §§ 1–7. Defendants in the case were Vista Disposal, Inc. ("Vista"), Darralyn Bowers, Sam Cusenza, Joseph Valentini, the City of Detroit, Coleman A. Young, Michigan Disposal, Inc., Wayne Disposal, Inc., Wolverine Disposal–Detroit, Inc. Wolverine Disposal, Inc., Charles Beckham, Nancy Allevato, as personal representative for the Estate of Michael J. Ferrantino, Sr., Charles Carson, and Walter Tomyn. This action was dismissed for lack of standing.

On January 27, 1989, the Sixth Circuit on appeal reversed the dismissal of case no. 84–71068. On April 14, 1993, this court entered a stipulated order of dismissal with prejudice and without costs in case no. 84–71068. The stipulated order was signed by plaintiff Oakland County and defendants [1] Darralyn Bowers, Sam Cusenza, Joseph Valentini, Wayne Disposal, Inc., Coleman A. Young, Michigan Disposal, Inc., Wolverine Disposal–Detroit, Inc. Wolverine Disposal, Inc., Charles Beckham, Nancy Allevato, as personal representa-

tive for the Estate of Michael J. Ferrantino, Sr., Charles Carson, and Walter Tomyn.

### B. *Case No. 86–74656*

After the complaint in case no. 84–71068 was dismissed and before the Sixth Circuit reversed the dismissal, Oakland County filed the complaint in the instant action, case no. 86–74656. The complaint filed in the instant action is almost identical to the complaint filed in the 1984 case except that the instant case was filed as a class action. The defendants named in the 1986 complaint were Vista, Darralyn Bowers, Sam Cusenza, Joseph Valentini, Michigan Disposal, Inc., Wayne Disposal, Inc., Wolverine Disposal–Detroit, Inc. Wolverine Disposal, Inc., Charles Beckham, Nancy Allevato, as personal representative for the Estate of Michael J. Ferrantino, Sr., Charles Carson, and Walter Tomyn.

After the Sixth Circuit on appeal reversed the dismissal of case no. 84–71068, the district court dismissed case no. 86–74656 as to all defendants except Vista because the remaining issues were identical to the issues unresolved in the 1984 litigation.[2] The instant action (case no. 86–74656) was not dismissed against Vista because the district court had previously granted a clerk's default against Vista. Vista was one of the corporations involved in the conspiracy to obtain the sludge hauling contracts. In 1992, Oakland moved for entry of default judgment and damages award against Vista in the instant action (case no. 86–74656). On March 27, 1992, Oakland County was granted a Default Judgment against Vista in the instant action (case no. 86–74656) in the amount of $2,011,-136 before interest and trebling.[3]

On February 26, 1993 Oakland filed a petition for proceedings supplementary to judgment in connection with funds of Vista held by the United States in the instant action (case no. 86–74656), naming the United States as auxiliary defendant. In the petition, Oakland argued that the United States was in possession of all the Vista property

---

1. Vista had been dismissed voluntarily over a year before this stipulated order was entered.

2. The court also denied class certification.

3. The total amount of the Default Judgment after interest and trebling was $9,762,687.

after obtaining orders of forfeiture in criminal case no. 83–60070 for Bowers' interest in the Vista property and funds formerly owned by Vista and transferred to the three criminal defendants. Through the orders of forfeiture, pursuant to 18 U.S.C. § 1963(c), the United States had received $360,000 from Bowers; $100,000 from Cusenza; $100,000 from Valentini; and $1,808,052 from the Vista receivership.[4] The forfeiture order against the Vista receivership was based on the order of forfeiture of Bower's interest in Vista. In its petition for supplementary proceeding, Oakland sought to recover the portion of the Vista funds which it alleged were traceable to the harm suffered by Oakland. The petition sought the $2,011,136 that was set forth in the 1992 Default Judgment against Vista as well as $1,243,093 which Oakland alleged it was harmed by loss of use of that money.

Oakland had previously attempted to recover the forfeited funds from the United States. On September 19, 1984, in accordance with the procedures then in place under 18 U.S.C. § 1963(c), Oakland County submitted to the Attorney General a petition for remission of the forfeited property. The Attorney General denied Oakland County's petition for remission on April 23, 1993.

This court held a bench trial in the instant action (case no. 86–74656) to determine whether Oakland was entitled to recover funds from the United States which were forfeited from Vista. Final arguments were completed on July 6, 1994. In plaintiff's revised findings of fact and conclusions of law, filed after the bench trial, Oakland stated that it seeks $3,075,797 from the United States out of the funds the United States secured through forfeiture, arguing that the United States is holding that money in a constructive trust. The claim for $3,075,797 is comprised of a claim for $1,657,558 for damages[5] and a claim for $1,418,239, which Oakland argues is the benefit that the United States derived from holding Oakland's property.

The United States alleges that on July 14, 1994, after proofs in this case were closed, the United States discovered a Settlement Agreement and Mutual Release ("Agreement") between plaintiff Oakland County and defendants Michigan Disposal, Inc., Wolverine Disposal–Detroit, Inc., Wolverine Disposal, Inc., Nancy Allevato, as personal representative for the Estate of Michael J. Ferrantino, Sr., Darralyn Bowers, Sam Cusenza, Joseph Valentini, Charles Carson, and Walter Tomyn. The Agreement was dated April 14, 1993, the same day that the court entered the stipulated order in the 1984 case. According to the Agreement, Wayne Disposal, Inc. and Michigan Disposal, Inc. paid Oakland County $4 million for the settlement.

## II. Legal Standard

A motion to reopen evidence is within the discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Calage v. University of Tennessee*, 544 F.2d 297, 301 (6th Cir.1976). The significance of the evidence that a party seeks to admit should be considered in determining a motion to reopen proofs. *Ramsey v. United Mine Workers of America*, 481 F.2d 742, 753 (6th Cir.1973), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 473 (1973).

## III. Analysis

The United States brings the instant motion to reopen proofs for the court to consider the Agreement signed by Oakland County and Wayne Disposal, Inc. ("WDI"), Charles Beckham, Nancy Allevato, as Personal Representative for the Estate of Michael J. Ferrantino, Sr., Darralyn Bowers, Sam Cusenza, Joseph Valentini, Charles Carson, Walter Tomyn, Michigan Disposal, Inc. ("MDI"), Wolverine Disposal, Inc. and Wolverine Disposal–Detroit, Inc. The United States makes two arguments in support of its motion. First, the United States argues that it could not have known about this Agreement before the close of proofs. Second, the United States argues that the Agreement would

---

**4.** At the time these orders were entered, Vista was in the hands of a receiver.

**5.** Oakland alleges that it paid this money to the Detroit Water and Sewer Department ("DWSD") and DWSD paid Vista for the services in question.

work as a complete defense for the United States in this litigation. Oakland County argues that the United States could and should have known about this Agreement and that even if the Agreement is admitted it will not affect this litigation.

### A. Motion to Reopen Proofs

#### 1. Availability of the Agreement

■ The United States argues that it could not discover the Agreement earlier because the Agreement contains a "gag" provision. The following paragraph is included in the Agreement:

> Oakland, WDI and MDI shall jointly agree upon and prepare a written statement to use to respond to any third-party inquiry concerning the settlement and/or dismissal of the Litigation. Said statement shall be substantially in the form attached hereto as Exhibit B.[6] Given the fact that the Litigation has been settled, no purpose is served by further airing the disputes which were the subject of this Litigation and because no admission of liability or fault by any party has been or will be made, it is the expectation of the parties that no party will make any additional or public comment on the Litigation.

Exhibit A to the United States' Motion to Reopen Proofs, para. 6, at 11. Oakland County argues that the United States should have known about this Agreement because Oakland County referred to the 1984 Oakland case in its first pleadings against the United States and the stipulated order dismissing that case is a public record. Oakland County argues that if the United States had asked Oakland County why the case was dismissed with prejudice and without costs, then Oakland would have informed the United States of the Agreement. During oral argument, the United States explained that it asked about the Agreement and the attorney for Oakland informed the United States that Oakland had settled with Michigan Disposal. According to the United States, Oakland's attorney did not mention that Oakland had

also settled with Bowers, Cusenza, and Valentini.

Oakland County argues that the United States should have known about the Agreement because it was reported in local newspapers. Oakland provided the court with two articles from local newspapers. Both articles mentioned the existence of a settlement between Oakland and Michigan Disposal. Neither article stated that Oakland had also settled with Bowers, Cusenza, and Valentini, which is the basis for the United States' motion to reopen proofs.

#### 2. Effect of Settlement on this Litigation

The United States argues that the court should admit the Agreement because it will provide a full release for the United States from this litigation.[7] The Agreement provides the following release:

> Oakland hereby fully and forever releases, acquits and discharges the Defendants, and each of them jointly and severally, as well as their affiliated and related companies, agents, attorneys, employees, officers, directors, stockholders, successors, heirs and assigns

.      .      .      .      .

Agreement at para. 7, Exhibit A to United States' motion to reopen proofs. The United States argues that it is entitled to assert the release provided to the three individual criminal defendants, Bowers, Cusenza and Valentini, as a defense to Oakland's claim for the Vista funds. Oakland County argues that its claim against the United States is unaffected because the Agreement specifically excepts from the release the funds held by the United States:

> Nothing contained herein shall be understood to release or waive Oakland's right to enforce its judgment against Vista Disposal, Inc. insofar as is necessary to collect the Vista Monies or construed to preclude Oakland from continuing its efforts to secure the Vista Monies in proceedings be-

---

**6.** No exhibit B to the Agreement was ever agreed upon by the parties.

**7.** The United States addressed this argument in its motion for summary judgment. The court will consider this argument as part of the analysis for the motion to reopen proofs.

fore Judge Gadola in Civil Action No. 86–CV–74656–OT, or in any ancillary proceedings related thereto, or in any administrative proceedings before the United States Department of Justice ...

(c) Nothing herein shall be construed to constitute any release or waiver by Oakland of its claim of entitlement to the Vista Monies.

Agreement at 3, para. 3(b) and (c), Exhibit A to United States' motion to reopen proofs. At page 15, para. 10(c), the parties further agreed that the payments made pursuant to the Agreement "shall not be construed to benefit Vista Disposal, Inc., the United States, or reduce or otherwise impact Oakland's attempts to recover the Vista Monies currently held by the United States Department of Justice."

The United States argues that Oakland is not entitled to pursue the equitable remedy of constructive trust against the United States after it has obtained satisfaction of its claim at law against the conspirators because Oakland would achieve a double recovery. Oakland argues that there is no double recovery because the $4 million paid by Michigan Disposal and Wayne Disposal under the Agreement is not attributable to the damages caused by Vista. Oakland alleges that at the time of the settlement it estimated that the damages caused by Michigan Disposal were approximately $1.5 million. Under the civil enforcement statute of RICO, 18 U.S.C. § 1964(c), the award of damages is tripled, interest is collectible (over ten years at the time of settlement), and attorney's fees are awarded. According to Oakland, the $4 million was strictly attributable to the harm caused Oakland by Michigan Disposal. The issue of whether Oakland will achieve a double recovery for its damages is a factual question. If a portion of the funds paid in consideration for the Agreement compensated Oakland for the same damages which it alleges are attributable to the funds held by the United States, then this recovery will affect this court's determination of the amount of money that the United States holds in constructive trust for Oakland. Due to the potential significance of the Agree-ment, the court will exercise its discretion and reopen proofs to admit the Agreement.

**B. Motion for Summary Judgment**

■ The United States argues that it should be granted summary judgment because the release of the three individual criminal defendants releases the United States from this litigation. The United States ignores the clear language of the Agreement. Oakland retained the right to pursue its claims to collect the Vista money currently held by the United States. "The scope of a release is governed by its terms as indicating the intention of the parties at the time it is accepted. The release covers only claims intended by the parties to be released and has no greater effect." *Auto–Owners Ins. Co. v. Higby,* 57 Mich.App. 604, 606, 226 N.W.2d 580 (1975). In *Zenith Radio Corporation v. Hazeltine Research,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), the Supreme Court stated that settlement agreements in causes of action based upon federal statutes will only release coconspirators "in accordance with the intentions of the parties." *Id.* at 345, 91 S.Ct. at 810. The Court further explained that "although a release of one coconspirator normally releases all others, it will not have such an effect if a plaintiff expressly reserves his rights against the others." *Id.* at 344, 91 S.Ct. at 809. Oakland's cause of action against Vista and the other conspirators was based upon RICO, a federal statutory cause of action, and the Agreement specifically excluded Oakland's rights to pursue the Vista money.

■ The United States argues that it is the successor in interest of the three criminal defendants because it acquired the Vista funds through *in personam* orders of forfeiture against the three criminal defendants and therefore a release of the defendants releases the United States. This court has already explained in an earlier proceeding in this case, "the United States' relationship to Vista and its owners/operators is and has long been adversarial. Moreover, because the government's interest in the Vista assets derives from 18 U.S.C. § 1963, it is distinctly different in nature from Vista's interest." *Oakland County, by Kuhn v. Vista Disposal,*

*Inc.,* 840 F.Supp. 75, 77 (E.D.Mich.1993). For the same reasons, the United States' interest in the Vista assets is also different from the interest of the criminal defendants.

■ The United States also argues that it is entitled to assert the release of the individual criminal defendants despite the clear language of the Agreement because the language of the Agreement does not have a legal effect in this case. The United States relies on *Theophelis v. Lansing Hospital,* 430 Mich. 473, 424 N.W.2d 478 (1988), in which the court held that a valid release of an agent for tortious conduct operates to bar recovery against a principal under a theory of vicarious liability but does not bar recovery for damages independently caused by the principal. The United States also relies on *Beardslee v. Michigan Claim Services,* 103 Mich. App. 480, 302 N.W.2d 896 (1981), in which the court held that a release executed by a husband bars a wife's derivative claims but not her independent claims. Unlike the two Michigan cases, Oakland's claim for a return of funds from the United States is not based on the theory that the United States is liable for harm caused by the criminal defendants. Rather, Oakland argues that the United States holds the money for Oakland based on a theory of constructive trust. Therefore, the cases relied upon by the United States do not bar Oakland's claim against the United States.[8]

■ Lastly, the United States argues that Oakland cannot come into equity with unclean hands, having concealed the Agreement from the United States. The United States does not allege that it ever requested a copy of the Agreement from Oakland through discovery. It was not Oakland's responsibility to provide an agreement that the United States had not requested. The United States also argues that Oakland had misrepresented to the United States that it did not intend to collect the Vista liabilities from the United States. However, the affidavit cited by the United States admits that Oakland stated that it would file a petition for remission or mitigation of the forfeiture. The government delayed answering the petition for over eight years and then denied the petition. Under these circumstances, Oakland's attempt to recover those funds from the United States does not constitute "unclean hands."

## C. Motion to Strike

The United States filed a motion to strike Oakland's supplemental brief in opposition to the United States' motion for summary judgment. The court finds that in the interests of justice it will not strike Oakland's supplemental brief.

### ORDER

Therefore, it is hereby **ORDERED** that the United States' motion to reopen proofs is **GRANTED.**

It is further **ORDERED** that the United States' motion for summary judgment is **DENIED.**

It is further **ORDERED** that the United States' motion to strike Oakland County's supplemental brief in opposition to the United States' motion for summary judgment is **DENIED.**

**SO ORDERED.**

---

8. The United States also cites two cases from other states in which a release was held to discharge a guarantor and a surety. *Knight v. Cheek,* 369 A.2d 601 (D.C.App.1977); *City of Philadelphia v. Joseph S. Smith Roofing, Inc.,* 410 Pa.Super. 95, 599 A.2d 222 (1991). First, these cases from other states are not binding upon this court. Second, the United States is neither a guarantor nor a surety in the instant action.