GREAT WESTERN SMELTING & REFINING CO. *v.* EVENING
NEWS ASS'N.

1. TROVER — CONVERSION — WHAT CONSTITUTES—REPUDIATION OF
   CONTRACT—NECESSITY OF DEMAND.

   Where defendant ordered some stereotype metal from an-
   other, with whom it had an understanding that the price
   thereof should be applied on the latter's account with defend-
   ant, and the latter transferred the order to plaintiff, which
   had no knowledge of the understanding referred to, and
   shipped the metal to defendant, accompanied with a cash in-
   voice, whereupon defendant immediately melted the metal,
   supposing, in good faith, that it was its own, under the spec-
   ial arrangement with the person from whom it had ordered
   it, but afterwards, on learning the terms upon which the
   metal had been shipped by plaintiff, repudiated the entire
   transaction, and insisted that it had no contract relations
   with plaintiff, its conduct constituted an unlawful conver-
   sion, for which trover would lie without any prior demand or
   refusal.

2. SAME—ESTOPPEL.

   Where defendant insisted that it had never bought property
   of plaintiff, and declined to recognize any claim on plaintiff's
   part against it, it was estopped, when sued for conversion of
   the property, to assert that plaintiff had sold the property to
   it, and could sue only in assumpsit for its value.

Error to Wayne; Frazer, J. Submitted January 4,
1905. (Docket No. 11.) Decided February 4, 1905.

Trover by the Great Western Smelting & Refining
Company against the Evening News Association. There
was judgment for plaintiff on a verdict directed by the
court, and defendant brings error. Affirmed.

*Jonathan Palmer, Jr.,* and *John M. Parker,* for ap-
pellant.

*Rolland J. Cleland,* for appellee.

Blair, J.   On the 26th day of September, 1900, defend-
ant sent to one I. M. Jacobson, of Toledo, Ohio, who pre-
vious to that time had been engaged in the brokerage busi-
ness, the following order:

" *Dear Sir:*   We are pleased to inform you that we are
in a position to place an order with you for one ton No.
One Stereotype Metal, which kindly ship immediately.
We trust that we may be favored with the lowest market
price, although we want a first-class article.   Kindly ac-
knowledge order and state when shipment will be made.
                " Yours very truly,
                        " The Evening News Ass'n,
                        " H. S. Scott, Business Manager."

This order was on the 27th day of September, 1900, for-
warded to the plaintiff, with the following indorsement
thereon:

"I herewith transfer the above formal order to the
Great Western Smelting and Refining Company, of
Chicago.
        [Signed]        "I. M. Jacobson."

Defendant and appellant induced the judge, upon its
motion, to strike out this indorsement, for the reason that
the signature of Jacobson was not properly proved.

On the 1st day of October, 1900, plaintiff shipped the
stereotype metal, and on the same day mailed the follow-
ing invoice:

                        "Chicago, October 1st, 1900.
"Detroit Evening News Ass'n,
                        " Detroit, Mich.
" Bought of Great Western Smelting & Refining Com-
pany, Manufacturers of Metals, 173–199 West Kinzie
Street.   Terms Cash.   Shipped via ———.
        2,055 lbs. No. 1 Stereotype, 7½, $154.13."

—Which was received by defendant either on the 2d or
3d day of October, but, whether before or after the receipt
of the metal, the record does not disclose with certainty.

On the 3d of October, 1900, defendant mailed to plain-
tiff the following letter:

"DETROIT, MICH., Oct. 3, 1900.
"GREAT WESTERN. SMELTING & REFINING CO.,
"173 W. Kinzie St.,
"Chicago, Ill.

"*Gentlemen:* We return herewith your bill for metal received today in response to our order upon I. B. Jacobson, of Toledo. We ordered this metal from Mr. Jacobson on the special understanding that it should apply on his advertising account with us, in fact, it was due to this advertising that we tendered him this order—in a reciprocal way. You will, therefore, kindly look to him for payment of the account. As we are writing him by this mail, he will probably take care of the matter promptly. Hoping that you have not been misled in regard to it, we are,

"Yours very truly,
"THE EVENING NEWS ASS'N,
"H. S. SCOTT, Business Manager."

On October 4, 1900, plaintiff replied to defendant's letter of the 3d, as follows:

"CHICAGO, Oct. 4th, 1900.
"THE EVENING NEWS ASS'N,
"Detroit, Mich.

"*Gentlemen:* Replying to yours of the 3rd inst. your order to Mr. Jacobson reads plainly that you are in position to place an order with him for 1 ton No. 1 stereotype metal to be shipped immediately, and makes no mention of payment to be taken out in advertising, which order was duly transferred to us. We shall, therefore, look to you for payment of this shipment, and if this is not satisfactory, please return same to us at once, and oblige. Inasmuch as you have returned our invoice, we take it that you have not taken the stock from the depot, in which event, please do not take it out, but return to us the shipping bill, and oblige,

"Yours respectfully,
"GREAT WESTERN SMELTING & REFINING CO. R."

Defendant did not reply to this letter of October 4th and no communications passed between the parties, so far as the record discloses, until the 24th of October, when plaintiff returned the invoice inclosed in the following letter:

"CHICAGO, Oct. 24, 1900.
"DETROIT EVENING NEWS ASS'N,
        "Detroit, Mich.
" *Gentlemen:* Inasmuch as we have received no notice of return of metal sent you under order to, Mr. Jacobson, we return herewith invoice covering same.
                "Respectfully yours,
" GREAT WESTERN SMELTING & REFINING CO. R."

On the 25th of October defendant replied as follows:

                "DETROIT, MICH., Oct. 25, 1900.
        "MANAGER'S OFFICE.
"GREAT WESTERN SMELTING & REFINING CO.,
                "173 West Kenzie Str.,
                        "Chicago, Ill.
" *Gentlemen:* Replying to your favor of October 24th, inclosing invoice of metal which you claim to have shipped us, we beg to say that we have never to our knowledge ordered goods from your concern, nor shall we recognize that you have any claim against us.

"We know, of course, that you refer to the shipment of metal which we ordered from I. B. Jacobson, of Toledo, who was at the time indebted to us, and from whom we ordered this metal to equalize our account. If you furnish this metal on Mr. Jacobson's order, you must look to him for payment, for if you look to us, we can only refer you to our attorney in any future reference to the matter. The metal was placed in use immediately on arrival, as we were short at the time, and before we had any knowledge of the peculiar action (to say the least) of Mr. Jacobson in the matter.
        "Yours very truly,
                "THE EVENING NEWS ASS'N.
                "H. S. SCOTT, Business Manager."

Upon receipt of defendant's letter of October 25th, plaintiff placed the matter in the hands of its attorneys, who, having demanded of defendant payment for the metal or the return of the metal, and having been refused, brought an action of trover in justice's court for the alleged conversion of the metal. Plaintiff, having been defeated in justice's court, appealed to the circuit court, where verdict and judgment were rendered in its favor by direction

of the court, and defendant brings the case to this court on writ of error.

Upon the conclusion of the proofs in the circuit court, it was agreed between the parties that they would submit the question whether the action of trover was an appropriate action, under the circumstances of this case, upon briefs, to the court, and that the court might direct a verdict in accordance with his determination of this question of law. The plaintiff claims that, under the rule adopted by this court in *McCormick Harvesting-Machine Co.* v. *Waldo*, 128 Mich. 135, the action of trover was the only action which would lie. On the other hand, defendant maintains that trover would not lie under the circumstances of the case, and that, if plaintiff had any cause of action at all, it should have been brought in assumpsit.

- The relations of these parties must be determined from the writings which passed between them, and it is apparent that, instead of there being a mutual understanding between the parties as to the terms of their dealing, there was a mutual misunderstanding. When the defendant received the stereotype metal, it understood it was receiving metal which had been shipped to it by Jacobson, either as his own, or which he had purchased and agreed to pay for under a special arrangement that defendant should pay Jacobson by giving him credit on his advertising account. As a matter of fact, it did not receive property of Jacobson, but it received the property of another, the plaintiff, who had no knowledge whatever of the special agreement with Jacobson, and who shipped the metal to the defendant on the express understanding that it was to be paid for in cash. The defendant at once upon receiving this metal melted it up, along with other metal which it had on hand, and put it into use, perhaps before receiving the invoice from plaintiff, and in ignorance of plaintiff's rights; but the defendant's good faith or innocent mistake could not confer title to the plaintiff's property, and, if it melted up the plaintiff's metal, supposing that it was its own under the special arrangement with Jacobson, and

afterwards, upon learning the terms upon which this metal was shipped by plaintiff, repudiated the entire transaction, and insisted that it had no contract relations with plaintiff at all, this conduct on its part constituted an unlawful conversion, for which, in our opinion, trover would lie without showing demand or refusal. The plaintiff never intended to give the defendant possession of the metal, or to convey the title to the metal to the defendant upon the basis of the special arrangement with Jacobson; and, when the defendant received the metal, not in accordance with the plaintiff's terms, although then unknown, but in hostility thereto, and in derogation of the plaintiff's rights, it converted the plaintiff's property to its own use as much as though it had taken the property which plaintiff had shipped to another, supposing in good faith that it had a right to take it, and had melted it up and applied it to its own uses. There seems to us to be no middle ground here. The defendant must have received this property in accordance with the plaintiff's right to payment for the property under the terms of sale, or it must have received it in derogation of those rights.

The defendant contends that the conduct of the plaintiff in charging the metal on its books to the defendant, and in demanding payment for the metal, and sending back the invoice, and some other circumstances disclosed by the record, show that the plaintiff treated the property as sold to the defendant, and are inconsistent with its right to bring action in trover for the conversion thereof. We think the defendant does not occupy a position to raise this question. After insisting throughout that it never bought any metal of the plaintiff, and declining to recognize any claim on the part of plaintiff against it, it cannot, when the plaintiff takes it at its word and brings suit for conversion of the property, reply that the plaintiff sold the property to it, and could only sue in assumpsit for the value of the property. It is estopped from setting up such a defense.

We think, under the stipulation of counsel, the court properly directed a verdict for the plaintiff, and the judgment will be affirmed, with costs.

MOORE, C. J., and MCALVAY, GRANT, and HOOKER, JJ., concurred.