NUNLEY v PRACTICAL HOME BUILDERS, INC

Docket No. 101468. Submitted May 4, 1988, at Detroit. Decided December 19, 1988.

Lenzie Nunley sustained a work-related injury, briefly returned to work, but was laid off shortly thereafter. Nunley filed with the Bureau of Workers' Disability Compensation a claim for workers' compensation benefits against General Growth Management Company, also known as Practical Development Company, which claim was subsequently settled with the execution of a redemption agreement in which it was expressly stated that, in consideration for the settlement, Nunley was voluntarily quitting employment, waiving any seniority rights and releasing any claim he may have for reemployment based on such seniority rights. Nunley then brought an action in the Wayne Circuit Court against Practical Home Builders, Inc., Practical Development Company and Practical Management Company, alleging that defendants were his employers and that defendants had laid him off and failed to recall him to work on the basis of his race, in violation of the Civil Rights Act. The trial court, Lucile A. Watts, J., granted defendants' motion to limit plaintiff's damages to the period from when he was laid off to when he signed the redemption agreement. The trial court thereafter granted summary disposition in favor of defendants, ruling that the release provision of the redemption agreement barred plaintiffs' civil rights action. Plaintiff appealed.

The Court of Appeals *held:*

1. The release executed by plaintiff is sufficiently broad to bar the specific claims set forth in his circuit court complaint. Plaintiff's claim that he was laid off because of race is barred with the acknowledgment in the release that he voluntarily quit his employment. Plaintiff's claim that white employees with less seniority were recalled is barred since plaintiff had

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 459 *et seq.*

Modern status of rules as to avoidance of release of personal injury claim on ground of mistake as to nature and extent of injuries. 13 ALR4th 686.

waived any seniority rights he had and released any claim for reemployment based on such seniority rights.

2. The trial court did not err in ruling that the release applied to all defendants. Plaintiff sought the benefit of what he refers to as the equitable doctrine of "entity enterprise liability" to hold all three defendants liable for race discrimination. Plaintiff cannot now resurrect the separate corporate entities when to do so would work to his benefit.

Affirmed.

MURPHY, J., dissented and would hold that the release signed by plaintiff should not be construed as a bar to the claims brought under the Civil Rights Act. Judge MURPHY noted that the document signed by plaintiff appears to be a form release which was intended only to release defendants from liability under the Workers' Disability Compensation Act.

RELEASE — WORKERS' COMPENSATION REDEMPTION AGREEMENTS —
ACTIONS.

A workers' compensation redemption agreement, in which it is expressly stated that a laid off injured worker, in consideration for the agreement, is voluntarily quitting employment, waiving any seniority rights and releasing any claim he may have for reemployment based on such seniority rights, bars a subsequent claim brought by the worker against his employer that his layoff and nonrecall were in violation of the Civil Rights Act (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*William J. King, Jr.,* for plaintiff.

*Bodman, Longley & Dahling* (by *James J. Walsh* and *David K. McLeod*), for defendants.

Before: GILLIS, P.J., and MURPHY and H. R. GAGE,* JJ.

GILLIS, P.J. Plaintiff appeals as of right from the trial court's orders granting defendants' motion for summary disposition and defendants' motion to limit plaintiff's damages. We affirm.

Plaintiff began to work for defendants in November, 1964. Plaintiff worked continuously until November, 1975, when he was injured on the job.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff returned to work in February, 1976. Plaintiff claimed that he was laid off on March 15, 1976, because he was told that there was insufficient work. Plaintiff decided to undergo elective surgery which was necessitated by his November, 1975, injury. Plaintiff was unable to return to work until July, 1976. At that time, plaintiff was told that there was still no work for him. Plaintiff filed a workers' compensation claim against defendant Practical Development Company. Plaintiff's claim was settled by a redemption agreement which provided:

RELEASE AND WAIVER OF SENIORITY

Whereas Lenzie Nunley has filed a claim under the Workmen's Compensation Act for injury alleged to have resulted from his/her employment, and whereas the employer, General Growth Management Co. a/k/a Practical Development Co., has denied liability, the undersigned, Lenzie Nunley, in consideration of a settlement of the claim through redemption proceedings with the Workmen's Compensation Department, does hereby voluntarily quit his/her employment with General Growth Management Co. a/k/a Practical Development Co. waives any and all seniority rights he/she may have and releases any claim he/she may have for re-employment based on such seniority rights.

On November 7, 1977, plaintiff signed the release.

From November 15, 1976, until July 26, 1977, plaintiff worked for Ben Lee Iron & Metal. On July 27, 1977, plaintiff began working for Ford Motor Company. Plaintiff was laid off in July, 1979. Thereafter, plaintiff worked on "odd jobs." On January 25, 1980, plaintiff filed suit against defendant Practical Home Builders, Inc., alleging that he worked for that defendant and that that

defendant had violated the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, by laying him off and by failing to call him back to work despite his seniority because of his race. As an affirmative defense, defendant Practical Home Builders, Inc., claimed that plaintiff was not its employee.

On February 14, 1983, plaintiff filed his first amended complaint, adding Practical Development Company and Practical Management Company as defendants and alleging that each of the defendants operated out of the same address and had identical officers and directors. Plaintiff also added a second count, alleging that defendants violated the fair employment practices act, MCL 423.301 *et seq.*; MSA 17.458(1) *et seq.*, which was repealed by the Civil Rights Act in 1977. Defendants moved to strike plaintiff's first amended complaint because it added new parties after the statute of limitations had expired. Plaintiff responded that defendants were engaged in a continuing tort and that they all employed plaintiff.

Defendants moved for summary disposition on the basis that plaintiff's complaint was filed after the applicable statute of limitations had expired. MCR 2.116(C)(7). Plaintiff again claimed that defendants' action constituted continuing violations of the Civil Rights Act. Plaintiff further alleged that service of process on defendant Practical Home Builders, Inc., tolled the statute of limitations as to the other defendants and that defendant Practical Home Builders, Inc., owned defendant Practical Development Company. On September 24, 1985, the trial court denied defendants' motion.

On August 15, 1985, defendants filed a motion to limit plaintiff's damages from the day plaintiff was laid off until July 28, 1977, the day he began to

work for Ford Motor Company at higher wages than he would have received working for defendants, or until November 7, 1977, the day plaintiff signed the release stating that he had voluntarily quit. Plaintiff responded that he should not be permanently barred from recovering lost wages because he had worked for Ford Motor Company for two years. Plaintiff further argued that, while he should be able to assert what he refers to as the equitable doctrine of entity enterprise liability, which was outlined in *Pfaffenberger v Pavilion Restaurant Co,* 352 Mich 1, 6; 88 NW2d 488 (1958), to demonstrate that all three defendants were actually one for purposes of discriminating against him, he should also be allowed to argue that defendants should be treated as separate corporations for the purpose of determining to which defendant the release applied. Finally, plaintiff argued that the release waived plaintiff's seniority rights and any workers' compensation claims arising therefrom, but did not waive any other claims, including the specfic race discrimination claims filed by him. On September 24, 1985, the trial court denied defendants' motion to limit plaintiff's damages from March 15, 1976, to July 28, 1977, but granted defendants' motion to limit plaintiff's damages from March 15, 1976, to November 7, 1977, the date plaintiff signed the release stating he voluntarily quit.

Plaintiff filed an application for leave to appeal the trial court's order granting defendants' motion to limit damages and defendants filed a late application for leave to appeal the trial court's order denying their motion for summary disposition on the basis of the statute of limitations. This Court denied leave to appeal and denied plaintiff's motion for rehearing on its denial of plaintiff's request for leave to appeal.

Defendants then moved for summary disposition pursuant to MCR 2.116(C)(7), claiming that plaintiff's suit was barred by the release he signed in regards to his workers' compensation claim. Plaintiff responded that the release signed by him dealt with his voluntary termination with defendant Practical Development Company, waiver of his seniority rights, and release of any claim for reemployment based on such seniority rights. Plaintiff argued that his release did not apply to any other claims or to any other defendants. The trial court granted defendants' motion for summary disposition. Plaintiff appealed the order granting summary disposition as well as the order limiting plaintiff's damages.

Plaintiff first claims that this case is distinguishable from *Beardslee v Michigan Claim Services, Inc,* 103 Mich App 480; 302 NW2d 896 (1981), lv den 412 Mich 872 (1981), where the release signed by the plaintiff as part of a workers' compensation redemption, which forever released and discharged defendants from "any and all . . . causes of action . . . of whatsoever kind and nature," was held to bar the plaintiff's subsequent noncompensation-related cause of action. While we agree with plaintiff that the language in the present release is not as broad as it was in *Beardslee,* we nonetheless agree that the release's language is broad enough to bar plaintiff's specific claims.

In *Slayton v Michigan Host, Inc,* 122 Mich App 411; 332 NW2d 498 (1983), the plaintiff redeemed her workers' compensation claim and signed a release in which she voluntarily quit her employment with the defendant and waived any and all seniority rights she may have had. The plaintiff subsequently filed a sexual discrimination claim under the Civil Rights Act. While reversing and remanding on different grounds, this Court noted

that the plaintiff may have waived some of her claims against the defendant by executing the release.

In *Hill v Terminix International, Inc,* 617 F Supp 1030, 1031 (ED Mich, 1985), the plaintiff signed a "Release and Waiver of Seniority" providing:

> [I]n consideration of a settlement of this [workers' compensation] claim through redemption proceedings with the Bureau of Worker's Disability Compensation, does hereby voluntary quit his employment with the [sic] TERMINIX INTERNATIONAL, waives any and all seniority rights he may have and releases any claim he may have to re-employment based upon such seniority rights.

The court held that the language of the release was broad enough to bar the plaintiff's wrongful termination claim because it indicated that the plaintiff had voluntarily quit and waived any and all seniority rights. Subsequently, the court granted the plaintiff's motion to amend his complaint to allege a violation of the Civil Rights Act but, then, the court dismissed the plaintiff's claim because it was barred by the release executed by him.

A redemption agreement settling a workers' compensation claim would not necessarily bar a subsequent civil rights claim. However, like the court in *Hill, supra,* we hold that the release executed by plaintiff is sufficiently broad to bar the specific claims set forth in his complaint. Plaintiff's claim that he was laid off because of race is barred because the release specifically acknowledges that plaintiff "*voluntarily* quit his/her employment." (Emphasis supplied.) Plaintiff's claim that defendant recalled white employees with less seniority is barred because the release waived "any and all

seniority rights he/she may have and release[d] any claim he/she may have for reemployment based on such seniority rights."

Plaintiff further claims the trial court erred when it allowed the release to apply to all defendants rather than to only defendant Practical Development Company. In this case, plaintiff sought the benefit of what he refers to as the equitable doctrine of entity enterprise liability to hold all three defendants liable for race discrimination. Having done so, we agree with defendants that plaintiff cannot now resurrect the separate corporate entities when to do so would work to his benefit. See, e.g., *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 652; 364 NW2d 670 (1984).

Affirmed.

H. R. GAGE, J., concurred.

MURPHY, J. *(dissenting).* I disagree with the majority that the release signed by plaintiff in this case should be construed as barring his claims brought under the Civil Rights Act. The document signed by plaintiff appears to be a form release which I believe was intended to release defendants from liability as it related to any of plaintiff's claims which arose under the Workers' Disability Compensation Act. MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

As the majority points out, the wording of the release in this case is not as broad as that in *Beardslee v Michigan Claim Services, Inc,* 103 Mich App 480, 482; 302 NW2d 896 (1981), lv den 412 Mich 872 (1981). That release stated that the plaintiff was releasing the defendants "from any and all liabilities, causes of action, damages, claims, and demands, of whatsoever kind or nature, and particularly from any and all their

actions and statements in the proceedings, investigation and disposition of any and all of my claims under the Workers' Disability Compensation Act."

Had plaintiff in this case signed such a comprehensive release, I would have no difficulty concluding that plaintiff's claims alleging race discrimination were barred. However, I am particularly concerned when the scope of a release, which I believe is open to interpretation, is used to totally bar a potentially viable claim. The majority opinion states that a redemption agreement settling a workers' compensation claim would *not necessarily* bar a subsequent civil rights claim. However, the common practice employed in the settlement of these claims, under the majority's interpretation, would bar a plaintiff's civil rights claim. I think we can take judicial notice of the fact that release documents executed as part of a redemption agreement include both voluntary quit and waiver of seniority rights provisions. Therefore, in practical terms, any release document signed by a claimant in a workers' compensation claim would include these provisions and thus bar unrelated claims as well. Therefore, I would demand more than the language used in this release to bar a claim under the Civil Rights Act. See, e.g., *Grzebik v Kerr,* 91 Mich App 482, 486; 283 NW2d 654 (1979).

Moreover, I am unconvinced that the case authority relied upon by the majority supports the conclusion that plaintiff has signed away his race discrimination claim. Specifically, this Court in the first *Slayton* case, *Slayton v Michigan Host, Inc,* 122 Mich App 411; 332 NW2d 498 (1983), did state that the plaintiff *may* have waived *some* of her claims against the defendant by executing the release. However, nowhere is the wording of the release signed by the plaintiff in that case mentioned in the opinion. We simply do not know how

comprehensive of a release was executed in that case. In any event, the first *Slayton* case clearly held that a victim of discrimination may bring a civil suit to recover damages for any humiliation, embarrassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination injury. Such claims are not barred by the exclusive-remedy clause of the Workers' Disability Compensation Act because they are independent of any disability which might be compensable under the act. The Court stated:

> These types of injuries are the kind that the Elliott-Larsen Civil Rights Act was designed to protect against and to hold otherwise would undercut the legislative scheme to remedy discriminatory wrongs. [*Id.,* p 417. Citations omitted.]

After remand, the plaintiff in *Slayton* was again before this Court in *Slayton v Michigan Host, Inc,* 144 Mich 535; 376 NW2d 664 (1985). In that case the plaintiff complained that the trial court erred in prohibiting her from recovering damages for emotional distress and physical pain and suffering arising out of her sex discrimination claim after the date she redeemed her workers' compensation claim. In reversing the trial court, this Court held that the plaintiff was entitled to seek recovery for those damages, physical, mental or emotional, which she could prove were unrelated to the disability already compensated for by the redemption agreement. *Slayton, supra,* p 559.[1] The same result should occur in this case. Without commenting on

[1] Interestingly, this second *Slayton* opinion was not relied upon by the federal court in its decision in *Hill v Terminix International, Inc,* 617 F Supp 1030 (ED Mich, 1985). In addition to the fact that the decision in *Hill* is not binding on this Court, since the decision omits the holding of the later *Slayton* case, I am not convinced that it should be used as authority in the instant case to support the conclusion that plaintiff's race discrimination claim is barred.

the potential merits of plaintiff's race discrimination claim, plaintiff should be able to seek recovery for those damages which can be proven to be unrelated to the disability for which he has already been compensated under the redemption agreement.

For the above reasons, I dissent and would reverse the trial court's order granting summary disposition in defendants' favor and remand for further proceedings.