ALLEN v GARDEN ORCHARDS, INC

Docket No. 87059. Argued December 5, 1990 (Calendar No. 8). Decided July 2, 1991. Rehearing denied *post,* 1285.

Lucille R. Allen, as personal representative of the estate of Ray F. Allen, deceased, brought a wrongful death action in Delta Circuit Court against Garden Orchards, Inc., alleging that the deceased had been fatally injured as a result of Garden Orchards' negligence. The court, Dean J. Shipman, J., granted summary disposition for the defendant on the ground that the deceased was an employee and that a redemption agreement between the plaintiff, Garden Orchards, and Auto-Owners, Garden Orchards' insurer, respecting liability to pay workers' disability compensation benefits, redeemed Garden Orchards' entire liability for the injuries. The Court of Appeals, MURPHY, P.J., and MACKENZIE and GRIFFIN, JJ., affirmed in an unpublished memorandum opinion, holding that the acceptance of the redemption agreement equitably estopped the plaintiff from maintaining the action (Docket No. 112642). The plaintiff appeals.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH and Justice BRICKLEY, and an opinion by Justice BOYLE, the Supreme Court *held:*

A redemption order approves a settlement; it does not purport to determine which of the competing factual assertions advanced by the parties is correct.

In this case, the redemption agreement, by its terms, constituted a settlement of any and all liability the employer might have to pay weekly workers' compensation benefits and did not purport to include or cover all liability of the defendant arising out of the injury. Similarly, by its terms, the agreement redeemed only the defendant's entire liability for workers' compensation benefits and did not purport to include any other liability the defendant might have arising from the decedent's death. Further, no evidence was offered by the defendant that it justifiably relied and acted on the belief that the decedent was an employee. If the plaintiff prevails in this wrongful death action, any judgment for economic loss would be required to be reduced to the extent of the workers' compensation benefit paid pursuant to the redemption agreement.

Justice LEVIN, joined by Chief Justice CAVANAGH and Justice

BRICKLEY further stated that neither the payment of compensation nor the acceptance of it is a determination of the rights of the parties. The purpose of the redemption hearing is only to pass on the propriety of the redemption rather than the legitimacy of the claim. Thus, a redemption order does not constitute an adjudication or a determination, nor does the payment or acceptance of compensation constitute a determination of the rights of the parties.

Justice BOYLE, concurring, stated that a workers' compensation redemption agreement constitutes neither an adjudication nor an admission of liability and does not automatically bar a tort action arising from the same injury. A redemption is in fact a settlement, and its effect depends on the terms of the agreement. In this case, the redemption agreement, by its terms a full and final settlement of any and all liability the employer might have for weekly workers' compensation benefits, indicates no intent by the parties to settle any liability other than that potentially arising under the Workers' Disability Compensation Act.

Reversed and remanded.

Justice GRIFFIN, joined by Justice RILEY, dissenting, stated the plaintiff should be equitably estopped from maintaining in a subsequent wrongful death action that her husband was not an employee. To hold otherwise would seriously erode and undermine the exclusive remedy provision of the workers' compensation act.

The doctrine of estoppel has its origin in moral duty and public policy to promote common honesty and to prevent fraud. In this case, it is important to draw a distinction between estoppel by record, which precludes denial of the truth of matters in a judicial or legislative record, and equitable estoppel, which applies broadly to situations where, because something was done or omitted, the party is denied the right to plead or prove an otherwise important fact. Although estoppel by record is not applicable unless there has been an adjudication of the point at issue, the absence of an adjudication does not necessarily preclude the availability of equitable estoppel.

As a matter of policy, a party should not be permitted to claim status as an employee in order to induce an employer to settle its workers' compensation liability, and then claim otherwise in a subsequent tort action against the same employer on the basis of the same injury. To condone such a course of conduct would seriously undermine the exclusive remedy provision which is the cornerstone of the workers' compensation act. In view of the exclusive remedy provision, once a redemption

agreement has been negotiated, signed, and approved, as in this case, the employer should be able to expect, absent unusual circumstances, that it will not thereafter be subject to liability in tort to the employee or the employee's privies for the same injury.

Justice MALLETT took no part in the decision of this case.

COMPROMISE AND SETTLEMENT — REDEMPTION ORDERS — WORKERS' COMPENSATION BENEFITS.

A wrongful death action is not necessarily barred by an order of the Bureau of Workers' Compensation approving an agreement to redeem an employer's entire liability to pay workers' compensation; a redemption order approves a settlement; it does not purport to determine which of the competing assertions advanced by the parties is correct (MCL 418.831; MSA 17.237[831]).

*Peterson, Beauchamp, Degrand, Reardon & Hall, P.C.* (by *John R. Beauchamp*), for the plaintiff.

*O'Neill, Wallace & Doyle, P.C.* (by *David A. Wallace* and *David Carbajal*), for the defendant.

Amicus Curiae:

*Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for the Michigan Trial Lawyers Association.

LEVIN, J. This wrongful death action was commenced by Lucille R. Allen, as personal representative of her deceased husband, Ray F. Allen, after she had, as his widow, entered into a redemption agreement respecting Garden Orchards, Inc.'s, liability under the workers' compensation act. The Court of Appeals held that Lucille R. Allen's "acceptance of the redemption agreement" equitably estopped her from maintaining this action in tort.[1] We reverse.

---

[1] *Allen v Garden Orchards, Inc,* unpublished memorandum opinion of the Court of Appeals, decided August 18, 1989 (Docket No. 112642).

I

Ray F. Allen was fatally injured while working on a Garden Orchards' farm. Lucille R. Allen sought, as his widow, workers' compensation benefits. Auto-Owners Insurance Company, the workers' compensation insurer for Garden Orchards, defended on the basis that the "deceased was not an employee of Garden Orchards, Inc., but was instead an independent contractor." Garden Orchards had earlier asserted that Ray F. Allen was not an employee, but rather was a "self-employed contractor."

The redemption agreement was entered into between Lucille R. Allen, widow of Ray F. Allen, Garden Orchards, employer, and Auto-Owners Insurance Company, insurance carrier. The agreement was on Bureau of Workers' Compensation form 18 which provides that "all agreements to redeem liability *must* be submitted on blanks furnished by the bureau." (Emphasis added.)

The redemption agreement provided that Lucille R. Allen, Garden Orchards, and the insurer "represent[ed]" that Ray F. Allen was an employee of Garden Orchards, that Garden Orchards was the employer, and that the "[e]mployer has agreed to pay and employee's widow has agreed to accept $20,000.00 in full and final settlement of *any and all liability the employer might have for weekly Workmen's Compensation benefits* . . . because of any and all injuries arising out of and in the course of the employment that said employee might have sustained during his lifetime." (Emphasis added.)

The settlement embodied in the redemption agreement was considered by a workers' compensation magistrate at a hearing during the course of which Lucille R. Allen testified. A redemption

order, also on a bureau form, was entered which recited that the magistrate had reviewed the redemption agreement, had concluded that it should be approved, and had "ordered that said agreement to redeem the *employer's entire liability for workers' disability compensation benefits*" on payment of $20,000 is approved.[2] (Emphasis added.)

This action was subsequently commenced by

---

[2] Section 835 of the act, as amended, provides regarding redemptions:

(1) After 6 months' time has elapsed from the date of a personal injury, any liability resulting from the personal injury may be redeemed by the payment of a lump sum by agreement of the parties, subject to the approval of a hearing referee or worker's compensation magistrate, as applicable. If special circumstances are found which in the judgment of the hearing referee or worker's compensation magistrate, as applicable, require the payment of a lump sum, the hearing referee or worker's compensation magistrate, as applicable, may direct at any time in any case that the deferred payments due under this act be commuted on the present worth at 10% per annum to 1 or more lump sum payments and that the lump sum payments shall be made by the employer or carrier. When a proposed redemption agreement is filed, it may be treated as a lump sum application, within the discretion of a hearing referee or worker's compensation magistrate, as applicable. The filing of a proposed redemption agreement or lump sum application shall not be considered an admission of liability and if the hearing referee or worker's compensation magistrate, as applicable, treats a proposed redemption agreement as a lump sum application under this section, the employer shall be entitled to a hearing on the question of liability.

(2) The carrier shall notify the employer in writing of the proposed redemption agreement not less than 10 business days before a hearing on the proposed redemption agreement is held. The notice shall include all of the following:

(a) The amount and conditions of the proposed redemption agreement.

(b) The procedure available for requesting a private informal managerial level conference.

(c) The name and business phone number of a representative of the carrier familiar with the case.

(d) The time and place of the hearing on the proposed redemption agreement and the right of the employer to object to it.

(3) The hearing referee or worker's compensation magistrate, as applicable, may waive the requirements of subsection (2) if the carrier provides evidence that a good faith effort has been

Lucille R. Allen as personal representative of her husband's estate. She alleged that her husband had been retained by Garden Orchards as an independent contractor to perform services on a farm owned and operated by Garden Orchards and that, while performing such services, he was fatally injured, and that the proximate cause of the accident and fatal injury was the negligence of Garden Orchards.

Garden Orchards moved for summary disposition, asserting that Ray F. Allen was an employee of Garden Orchards and that a redemption order had been entered whereby Garden Orchards' "entire liability for the injuries sustained" by Ray F. Allen had been redeemed. Garden Orchards al-

made to provide the required notice or if the employer has consented in writing to the proposed redemption.

(4) For all proposed redemption agreements filed after December 31, 1983, each party to the agreement shall be liable for a fee of $100.00 to be used to defray costs incurred by the bureau, the worker's compensation board of magistrates, the appeal board, and the worker's compensation appellate commission administering this act, except that in the case of multiple defendants the fee for the party defendant shall be $100.00 to be paid by the carrier covering the most recent date of injury. The bureau shall develop a system to provide for the collection of the fee provided for by this subsection.

(5) The fees collected pursuant to subsection (4) shall be placed in the worker's compensation administrative revolving fund under section 835a and shall only be used to supplement and not replace appropriations for financing the bureau, the worker's compensation board of magistrates, the appeal board, and the worker's compensation appellate commission. Money in the worker's compensation administrative revolving fund shall only be used to pay for costs in regard to the following specific purposes of the bureau, the worker's compensation board of magistrates, the appeal board, and the worker's compensation appellate commission as applicable:

(a) Education and training.

(b) Case management.

(c) Hearing and claims for review.

(6) Subsections (2) to (5) only apply to proposed redemption agreements filed after December 31, 1983. [MCL 418.835; MSA 17.237(835).]

leged that the redemption agreement and order barred the instant action and constituted a "release, accord, settlement and satisfaction . . . ." The circuit judge granted summary disposition.

In affirming the summary disposition, the Court of Appeals cited its decisions in *Burgess v Holloway Construction Co,* 123 Mich App 505; 332 NW2d 584 (1983), and *Johnson v Harper-Grace Hosp,* 92 Mich App 202, 204; 284 NW2d 520 (1979).

## II

In *Jordan v C A Roberts Co,* 379 Mich 235, 246; 150 NW2d 792 (1967), this Court declared that a redemption order constituted "a final and conclusive determination of the liability" of the employer, and precluded maintenance of a wrongful death action against the employer by a widow as the personal representative of her husband's estate. The Court predicated its decision upon "the nature of the remedy under the workmen's compensation statute rather than upon an estoppel . . . ." *Id.* at 242.[3]

The Court said that a redemption order barred an action against the employer although there had not been "a contested adjudication of rights," *id.* at 244, and that to rule otherwise would be contrary to a provision of the act stating that when an

[3] The signers of the dissenting opinion advert to the words " 'the nature of the remedy.' " (*Post,* pp 437, 439.) It is clear that the Court in *Jordan* did not predicate its decision "upon an estoppel."

It also appears on reading that opinion and the dissenting opinion in *Bugg v Fairview Farms, Inc,* 385 Mich 338, 363-364; 189 NW2d 291 (1971), that while the Court did, indeed, point to the exclusive remedy provision, primary reliance was placed on subsequently repealed 1948 CL 416.1; MSA 17.212, which was seen correctly by the author of the opinion of the Court in *Jordan,* who also wrote the dissenting opinion in *Bugg,* as providing a "choice of remedies." And that is what the Court probably was adverting to when it spoke of "the nature of the remedy." See the discussion, *infra,* of *Jordan, Bugg,* and this statutory provision.

employee or his dependents elect to receive bene-
fits under the act, they thereby release the em-
ployer of all claims or demands at law arising
from such injury:

> If the employee, or his dependents, in case of his
> death, of any employer subject to the provisions of
> this act files any claim with, or accepts any pay-
> ment from such employer, or any insurance com-
> pany carrying such risks, or from the commis-
> sioner of insurance on account of personal injury,
> or makes any agreement, or submits any question
> to arbitration under this act, such action shall
> constitute a release to such employer of all claims
> or demands at law, if any, arising from such
> injury.[4] [1948 CL 416.1.]

The Court said that an action would be barred[5]
if proceedings were had under the workers' com-
pensation act "resulting in a *determination of
jurisdiction*" and that the unappealed order in the
case then at bar, approving the redemption of the
widow's workers' compensation claim, constituted
"a final and conclusive *determination* of the liabil-
ity" of the employer arising out of her husband's
death with the result that an action for wrongful
death was barred.[6] *Jordan, supra* at 246 (emphasis
added).

---

[4] This provision was enacted as § 1 of part VI of the workers'
compensation act as first enacted. 1912 (Ex Sess) PA 10. The provision
was compiled as 1915 CL 5488; 1929 CL 8478; 1948 CL 416.1. The
provision was repealed when the workers' compensation act of 1969
was enacted. 1969 PA 317.

[5] The Court acknowledged that despite the language of § 416.1, not
all "so-called proceedings" under the act are such as to constitute the
act as the exclusive remedy, and that the Court had held that neither
the payment of voluntary weekly compensation benefits nor the
acceptance of benefits voluntarily paid in an attempt to obtain an
award of compensation barred an action against an employer. *Jordan,
supra* at 245.

[6] The Court was closely divided in *Jordan.* Four justices signed the
majority opinion, three signed dissenting opinions, and one did not
participate.

The statutory provision, relied on in *Jordan*, 1948 CL 416.1, was repealed, two years after *Jordan* was decided when the workers' compensation act of 1969 was enacted.[7]

Four years after *Jordan* was decided, this Court, in *Bugg v Fairview Farms, Inc,* 385 Mich 338, 344; 189 NW2d 291 (1971), held that a wrongful death action was not necessarily barred by a redemption order. Although *Bugg* was decided after the repeal of § 416.1, the redemption order had been entered in March, 1968, before the repeal.

The justice who wrote the opinion for the Court in *Jordan* wrote a dissent in *Bugg* in which he relied on § 416.1. He said that in his view the question presented was one of "*choice of remedies* between the wrongful death act and the Workmen's Compensation Act," that he read the language of § 416.1 as had the trial judge, and that once the provisions of § 416.1 "come into play, the Workmen's Compensation Act remedy against the employer is exclusive."[8] *Bugg, supra* at 363-364 (ADAMS, J., dissenting). (Emphasis added.)

The majority said that the Court "need not determine the abstract question of whether an approval of a redemption agreement is a determination of the conditions of liability under the act by the compensation commission." *Id.* at 351. The majority continued that—contrary to the trial judge's ruling, which had been based on § 416.1, the parties by agreement had not resolved the meritorious issue, nor did they submit it to the referee for decision—and had reserved the question for determination in a pending lawsuit.[9] *Id.*

---

[7] 1969 PA 317, § 898; MCL 418.898; MSA 17.237(898).

[8] Another justice filed a separate dissenting opinion.

[9] The transcript of the redemption hearing showed that all parties agreed the settlement was "a compromise based on the asserted

The majority added that "[i]n order to be a bar, the adjudication must be taken and rendered upon the merits" and that "[p]arol evidence is admissible to ascertain whether a given question in issue was litigated, submitted and decided where the record is not conclusive and the issue of *res judicata* is raised."[10] *Id.* at 352.

Without adverting specifically to *Jordan,* the majority modified *Jordan* in stating:

> The *conditions of liability* under the act are necessarily determined by the compensation department for the purpose *only* of approving a redemption agreement. But this does not *necessarily* adjudicate the issue for all purposes. [*Bugg, supra* at 352. Emphasis added.]

Also, again without specifically adverting to *Jordan,* but in apparent reference thereto, the majority added:

> Just as a judgment by default admits the legality of the demand only for the purpose of the suit, so does an *agreement of redemption admit the jurisdiction of the commission only* for the purpose of approving the agreed payment. [*Id.* at 353. Emphasis added.]

defense that the injury did not arise in the course of employment," and that a pending wrongful death action would be prosecuted after the redemption. *Id.* at 344.

While, as the signers of the dissenting opinion assert, "there is nothing in the record of the redemption hearing to suggest that the parties [in the instant case] reserved any of the issues involved in the settlement for determination in a subsequent lawsuit" (*post,* p 438), neither is there anything in the record to suggest that the parties agreed to a resolution of the question whether Ray F. Allen was an employee.

[10] The majority held that § 416.1 was not a bar in light of the agreement of the parties that the disputed conditions of liability would be reserved for determination in the law action. The majority concluded that it was the employer who was estopped from raising the claim of release under § 416.1. *Bugg, supra* at 353.

The majority observed that § 416.1 had been repealed by the 1969 revision of the workers' compensation act and had been replaced by § 831 of the 1969 act, which, said the majority, was the provision in the 1969 enactment comparable to § 416.1. Section 831 provides:

> Neither the payment of compensation or the accepting of the same by the employee or his dependents shall be considered as a *determination* of the rights of the parties under this act. [MCL 418.831; MSA 17.237(831). Emphasis added.][11]

### III

Under the original workers' compensation act, the employer had an election whether to provide, and the employee had an election whether to seek or accept, workers' compensation benefits as an

[11] The signers of the dissenting opinion contend that § 831 does not reflect a "legislative intent to support the conclusion of the lead opinion" (*post*, p 438), observing that before the enactment of § 831 "the law had provided that the voluntary payment or acceptance of workers' compensation benefits did not, in and of itself, determine an employee's status or bar a subsequent action. *Jordan, supra*, p 245." (*Post*, p 438.) That was "the law," before the enactment of § 831, as the result of judicial construction. See n 5.

The repeal of 1948 CL 416.1 eliminated the statutory predicate of *Jordan, supra* at 246, which had been read by this Court as barring an action if proceedings were had under the workers' compensation act "resulting in a determination of jurisdiction . . . ." While neither the payment nor acceptance of benefits would, despite the language of § 416.1 as the result of that judicial construction, be deemed an election of remedies by the worker, proceedings under the act "resulting in a determination of jurisdiction" would be deemed an election of remedies so that the order in *Jordan* approving the redemption of the widow's workers' compensation claim precluded maintenance of an action for wrongful death.

The elimination of the statutory predicate of *Jordan* and the substitution of § 831 indicated a legislative intent that neither the payment of compensation nor the acceptance of benefits shall henceforth be deemed an election of remedies; in the words of the statute, neither payment nor acceptance of benefits shall "be considered as a determination of the rights of the parties . . . ."

alternative to an action at law.[12] Both the employ-
er's and employee's election was eliminated over
the years before *Jordan* or *Bugg* was decided.[13]
But, as sometimes occurs, the repealed premise—
that there was an election or choice—died hard. In
all events, the statutory provision, § 416.1, relied
on in *Jordan,* barring a law action, where the
employee or his dependents elect to seek workers'
compensation benefits rather than to sue at law,
was repealed in 1969, and no longer has operative
effect.

Consistent with § 831, providing that "[n]either
the payment of compensation or the accepting of
the same by the employee or his dependents shall
be considered as a *determination* of the rights of
the parties under this act" (emphasis added), this
Court has ruled that admissions made at a re-
demption hearing may not, where the settlement
"fell through," be considered in subsequent pro-
ceedings. *Farrell v Campbell, Wyant & Cannon
Foundry Co,* 392 Mich 344, 345; 220 NW2d 450
(1974). In so holding, this Court said that "the
purpose of the [redemption] hearing is to pass on
the propriety of the redemption *rather than the
legitimacy of the claim." Id.* at 346. (Emphasis
added.)

Pertinently to the question presented in the
instant case, this Court, in holding that the "Sec-
ond Injury Fund should not be subjected to a
separate, independent hearing to determine
whether the fund is liable for differential pay-
ments when the claimant and employer redeem all
alleged potential employer liability by entering
into a negotiated settlement where employer lia-
bility has been neither admitted nor adjudicated,"

---

[12] 1912 (Ex Sess) PA 10, part I, §§ 3 and 4, part II, § 1.

[13] See *Franges v General Motors Corp,* 404 Mich 590, 625; 274
NW2d 392 (1979).

declared that a redemption agreement "constitutes
*neither an admission nor an adjudication of em-
ployer liability." White v Weinberger Builders,
Inc,* 397 Mich 23, 27, 34; 242 NW2d 427 (1976).
(Emphasis added.) Similarly, in holding that a
redemption agreement may be set aside on the
ground of mutual mistake, this Court said that it
*does not regard "approval of a redemption agree-
ment as a finding of fact nor an admission of
liability." Solo v Chrysler Corp (On Rehearing),*
408 Mich 345, 350; 292 NW2d 438 (1980). (Empha-
sis added.)

The Court of Appeals thus erred in *Johnson,
supra* at 207, on which the Court of Appeals relied
in *Burgess* and in the instant case, in declaring
that the redemption served "as a final *adjudication*
of the rights of the parties in relation to this
particular injury . . . ."[14] (Emphasis added.) A re-
demption order does not, as set forth in *White* and

[14] *Johnson,* the plaintiff was an employee of a hospital, who was
treated, during a work break, in the out-patient department for an
injury that had occurred while she was at home. A redemption
agreement had been entered into respecting her claim that the
treatment caused a personal injury arising out of her employment.

The Court of Appeals held that she was equitably estopped from
maintaining an action for malpractice against the hospital. The Court
said that the doctrine of estoppel was "an appropriate vehicle to
prevent plaintiff from repudiating her original representations which
induced defendant to redeem its liability." *Id.* at pp 206-207. The
Court said it would be inequitable to permit plaintiff "to obtain the
security of a fixed settlement while permitting her to pursue a suit
for higher stakes in the circuit court." *Id.* at 207. The Court added
that to permit her to do so "would undermine the exclusive remedy
provision" of the workers' compensation act. *Id.* MCL 418.131; MSA
17.237(131).

The Court concluded that acceptance of disability benefits by way of
settlement and redemption and the redemption order "serves as a
final adjudication of the rights of the parties in relation to this
particular injury and estops plaintiff's civil suit." *Id.*

In *Burgess,* the Court of Appeals, citing *Johnson* and without
further analysis, ruled that the widow of a deceased employee could
not maintain an action against the employer on the theory that the
injury was caused by an intentional tort committed outside the scope
of employment where the widow had filed a workers' compensation
claim which had been redeemed.

*Solo,* constitute an adjudication or a determination. Nor does the payment or acceptance of compensation constitute a "determination of the rights of the parties under" the act. MCL 418.831; MSA 17.237(831).

IV

Although the Court of Appeals ruled that Lucille R. Allen was equitably estopped from maintaining this action, no evidence was offered by Garden Orchards that any representation, admission, or silence of Lucille R. Allen induced it to believe any facts, or that it justifiably relied and acted on the belief that Ray F. Allen was an employee. It appears rather that Auto-Owners, the insurance carrier, decided to redeem its exposure and that Garden Orchards' consent to the redemption was then obtained.

It has not been claimed, let alone shown, that Auto-Owners, in entering into the settlement, or that Garden Orchards in consenting to the settlement, obtained the agreement of Lucille R. Allen or her attorneys that the amount paid pursuant to the settlement would preclude maintenance of this action for wrongful death. A different question would be presented if Lucille R. Allen had agreed to accept the $20,000 in full settlement of all claims against Garden Orchards. Garden Orchards has not sought reformation of the settlement agreement.[15]

_____

[15] The signers of the dissenting opinion assert:

> [O]n the basis of the redemption proceeding record before us, there is every reason to believe that the parties settled and resolved their differences as to the matters expressly set forth in the redemption agreement. [*Post,* p 438.]

The redemption proceeding record, we agree, supports the view that

While Lucille R. Allen did, indeed, obtain payment of $20,000 on the basis that her husband was an employee of Garden Orchards, Auto-Owners, by the same token, avoided the possible payment of a greater sum on the basis, in part, that he was not an employee, but rather an independent contractor. Equities run in both directions.

We agree with the signers of the dissenting opinion that "the absence of an adjudication does not necessarily preclude the availability of equitable estoppel."[16] While a party may assert inconsistent claims or defenses,[17] where the other party concedes the validity of a claim or defense, and there is a disposition on that basis to the detriment of the other party, the doctrine of equitable estoppel may protect the other party from the reassertion of an inconsistent claim or defense, as set forth in *Hassberger v General Builders' Supply Co*, 213 Mich 489, 492; 182 NW 27 (1921), relied on by the signers of the dissenting opinion.

the parties resolved their differences with regard to the matters "expressly" set forth in the redemption agreement, which, by its terms, constituted a settlement "of any and all liability the employer might have *for weekly Workmen's Compensation benefits.*" (Emphasis added.) There is nothing in the redemption proceeding record which would tend to support the view that the parties settled and resolved their differences regarding matters other than liability for workers' disability compensation benefits.

The signers of the dissenting opinion state that if a majority of this Court has "doubts concerning the factual basis" for the application of equitable estoppel, the case should be remanded to the trial court "for a hearing, if deemed necessary, for further findings and a redetermination regarding this issue." (*Post*, p 440.) This case is being remanded to the circuit court, and nothing in this opinion precludes Garden Orchards from seeking such a hearing, findings, and a determination regarding this issue.

[16] *Post*, p 435.

[17]    (A) Pleading to be Concise and Direct; Inconsistent Claims.

* * *

(2) Inconsistent claims or defenses are not objectionable. [MCR 2.111.]

In *Hassberger,* the defendant had contended, in an action for specific performance, that there was not a valid contract between the defendant and the plaintiff, and, on that basis, *the action was dismissed by the plaintiff.* In a subsequent action to recover the money paid under the alleged contract, the defendant claimed that there was a valid and enforceable contract. This Court affirmed the decision of the circuit court, directing a verdict for the plaintiff, on the basis that the defendant was estopped by his conduct, "by insisting in the former case that the contract was void to the *disadvantage and expense* to plaintiff . . . ." *Id.* (Emphasis added.) The Court observed that the defendant "succeeded in *defeating* an action for specific performance on the ground that no valid contract existed between it and the plaintiff." *Id.* at 496. (Emphasis added.) The Court observed that if there were not a valid contract, then defendant had "some $3,750 of plaintiff's money to which it had no right" and would not be permitted to assert that there was a valid contract. *Id.*

In the instant case, Lucille R. Allen did not "defeat" Garden Orchards in the workers' compensation proceedings. There was a settlement. Neither party was defeated. Neither party prevailed. Money was indeed paid by Garden Orchards to Lucille R. Allen, but without any concession by *either* party regarding the correctness of the position asserted by the other. In contrast with *Hassberger, supra* at 490, Garden Orchards did not concede "that defendant's position was well taken."

In *Hassberger,* defendant's counsel "dismissed the bill and brought this action to recover the money paid." *Id.* This case would be similar if Garden Orchards' counsel had *conceded* that Ray F. Allen was an employee and had consented to

the payment of full workers' compensation benefits. Then, of course, Lucille R. Allen would be precluded from maintaining this action.

A redemption order approves a settlement. It does not purport to determine which of the competing factual assertions advanced by the parties is correct.

The redemption agreement, by its terms, constituted a settlement "of any and all liability the employer might have for weekly Workmen's Compensation benefits" and did not purport to include or cover all liability Garden Orchards might have arising out of the injury. The redemption order, by its terms, similarly redeemed only Garden Orchards' "entire liability for workers' disability compensation benefits," and did not purport to include any other liability that Garden Orchards might have arising out of Ray F. Allen's death.

If Lucille R. Allen prevails in this wrongful death action, the judge would be required to reduce the portion of the judgment for economic loss to the extent of the $20,000 workers' compensation benefit paid to her pursuant to the redemption agreement.[18]

Reversed and remanded to the circuit court.

CAVANAGH, C.J., and BRICKLEY, J., concurred with LEVIN, J.

BOYLE, J. (*concurring*). I concur in Justice LEVIN's conclusion that a workers' compensation redemption agreement constitutes neither an adjudication nor an admission of liability, *Solo v Chrysler Corp (On Rehearing),* 408 Mich 345, 350; 292 NW2d 438 (1980); *White v Weinberger Builders,*

---

[18] See RJA 6303, added by 1986 PA 178, effective October 1, 1986 (MCL 600.6303; MSA 27A.6303), before the redemption order in the instant case was entered, providing for the reduction of damages by collateral source benefits.

*Inc,* 397 Mich 23, 34; 242 NW2d 427 (1976), and therefore does not automatically bar a tort action arising from the same injury. I write separately to emphasize that a redemption is in fact a settlement, and therefore the effect to be given a redemption agreement depends on the terms of the agreement itself. See *Beardslee v Michigan Claim Services, Inc,* 103 Mich App 480, 485; 302 NW2d 896 (1981); *Nunley v Practical Home Builders, Inc,* 173 Mich App 675, 680-681; 434 NW2d 205 (1988); *Hill v Terminix Int'l, Inc,* 617 F Supp 1030, 1032 (ED Mich, 1985); *Merriweather v Int'l Business Machines,* 712 F Supp 556, 562-564 (ED Mich, 1989), aff'd 908 F2d 973 (1990).[1] I agree in the instant case that the redemption agreement, by its terms a "full and final settlement of any and all liability the employer might have *for weekly Workmen's Compensation benefits*" (emphasis added), indicates no intent by the parties to settle any liability other than that potentially arising under the Workers' Disability Compensation Act.

I concur in both the result and reasoning of part IV of the lead opinion.

GRIFFIN, J. I respectfully dissent. The lead opinion reasons from an assumption that the dispositive issue in this case is whether the decedent's status as an employee was "adjudicated" in the earlier redemption proceeding. Finding no adjudication, the opinion concludes that estoppel could not apply. I do not agree.

I

As this Court said in *Hassberger v General*

---

[1] This proposition, consistently enunciated in the Michigan Court of Appeals and in federal cases interpreting Michigan law, is not remarkable. Professor Larson states, "A settlement covers only those claims or rights that are specifically mentioned in the agreement." 3 Larson, Workmen's Compensation, § 82.51, p 15-1207.

*Builders' Supply Co,* 213 Mich 489, 492; 182 NW 27 (1921), the doctrine of estoppel " 'has its origin in moral duty and public policy; and its chief purpose is the promotion of common honesty, and the prevention of fraud.' " For purposes of this appeal, it is important to underscore a distinction between estoppel by record (res judicata and collateral estoppel) and equitable estoppel. Estoppel by record "is the preclusion to deny the truth of matters set forth in a record, whether judicial or legislative, and also to deny the facts adjudicated by a court of competent jurisdiction." 28 Am Jur 2d, Estoppel and Waiver, § 2, p 600. Equitable estoppel, on the other hand, broadly applies to situations where, "because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact." 28 Am Jur 2d, *supra,* § 27, p 627.

Although estoppel by record is not applicable unless there has been an adjudication of the point at issue, the absence of an adjudication does not necessarily preclude the availability of equitable estoppel. *Hassberger, supra.*[1]

The doctrine of equitable estoppel has often been invoked to prevent a party from taking an incon-

---

[1] In *Hassberger,* the plaintiff first brought an equitable action seeking specific performance of an option contract he had with the defendant. The defendant alleged in its answer and sought to prove at trial that the option was void and unenforceable. Because of the defendant's representations, the plaintiff dismissed the action, and brought another action for assumpsit on the basis that there was no contract. The defendant then argued that the option *was* valid and enforceable. After finding that res judicata was inapplicable because the prior suit had been dismissed, this Court said that "the distinction" between collateral estoppel and estoppel by conduct "is clear. One may be estopped by his conduct," despite the lack of a prior adjudication. *Id.* at 492.

sistent position in legal proceedings.[2] As this Court
has said,

> "Where a fact has been asserted, or an admis-
> sion made, through which an advantage has been
> derived from another, or upon the faith of which
> another has been induced to act to his prejudice,
> so that a denial of such assertion or admission
> would be a breach of good faith, the law precludes
> the party from repudiating such representation, or
> afterwards denying the truth of such admission."
> [*Hassberger, supra* at 492-493.]

> "To allow a party who succeeds in defeating one
> action on a seeming state of facts, though false, to
> shift his ground and defeat a second action by
> disproving the truth of his first defense would be
> to sanction the grossest abuse and fraud." [*Id.* at
> 493.]

As a matter of policy, a party should not be
permitted to claim that he is an employee in order
to induce an employer to settle its workers' com-
pensation liability, and then claim that he is not
an employee in a subsequent tort action against
the same employer on the basis of the same injury.
To condone such a course of conduct would seri-
ously undermine the exclusive remedy provision,
MCL 418.131; MSA 17.237(131), which is the cor-
nerstone of the workers' compensation act.

When nearly identical facts were presented in
*Jordan v C A Roberts Co,* 379 Mich 235; 150 NW2d
792 (1967), this Court concluded that the widow,
after representing that her deceased husband was
an employee for the purposes of obtaining ap-

---

[2] See *Hassberger, supra; Burgess v Holder,* 362 Mich 53; 106 NW2d
379 (1960); *Mertz v Mertz,* 311 Mich 46; 18 NW2d 271 (1945); *Billings-
ley v Gulick,* 256 Mich 606; 240 NW 46 (1932); *Great Western
Smelting & Refining Co v Evening News Ass'n,* 139 Mich 55; 102 NW
286 (1905).

proval of a redemption agreement, could not there-
after bring a wrongful death action against the
employer on the basis of the same accident. Speak-
ing through Justice ADAMS, the *Jordan* Court pred-
icated its decision on "the nature of the remedy"
provided under the act and pointed to the exclu-
sive remedy provision.[3] The *Jordan* Court found
additional support in another section of the act
which then read,

> "If the employee, or his dependents, in case of
> his death, of any employer subject to the provi-
> sions of this act files any claim with, or accepts
> any payment from such employer, or any insur-
> ance company carrying such risks, or from the
> commissioner of insurance on account of personal
> injury, or makes any agreement, or submits any
> question to arbitration under this act, such action
> shall constitute a release to such employer of all
> claims or demands at law, if any, arising from
> such injury. [1948 CL 416.1; MSA 17.212.]" [*Id.* at
> 245.]

The lead opinion focuses upon the fact that
§ 416.1 was repealed in 1969 and replaced by MCL
418.831; MSA 17.237(831), which reads:

> Neither the payment of compensation or the
> accepting of the same by the employee or his
> dependents shall be considered as a determination
> of the rights of the parties under this act.

However, these developments have not destroyed
the sound reasoning of the *Jordan* decision, as the
lead opinion implies. In the first place, § 416.1

---

[3] The provision then read:

"Where the conditions of liability under this act exist, the
right to the recovery of compensation benefits, as herein pro-
vided, shall be the exclusive remedy against the employer.
[1948 CL 411.4; MSA 17.144.]" [*Id.,* pp 244-245.]

made no reference whatever to the consequences of submitting a redemption agreement to the referee and obtaining approval after a hearing.

Secondly, § 831, which is referred to as being "comparable" to the repealed provision (*ante*, p 427), reflects no legislative intent to support the conclusion of the lead opinion. Indeed, the *Jordan* Court reached its contrary result after carefully acknowledging the very point made in § 831. Before the 1969 revision, the law had provided that the voluntary payment or acceptance of workers' compensation benefits did not, in and of itself, determine an employee's status or bar a subsequent action. *Jordan, supra,* p 245.

In *Bugg v Fairview Farms, Inc,* 385 Mich 338; 189 NW2d 291 (1971), the parties made clear in the transcript of the redemption hearing that they had not resolved their dispute concerning one issue, i.e., whether the injury arose in the course of employment. Pointing to the fact that the parties had expressly agreed to reserve this issue for determination in a subsequent third-party civil action, the *Bugg* Court concluded that the employer, in that instance, was estopped from later raising the redemption order as a release. *Id.,* p 353.

In the case at bar, there is nothing in the record of the redemption hearing to suggest that the parties reserved any of the issues involved in the settlement for determination in a subsequent lawsuit. It is true that, prior to the settlement and approval, the parties disagreed with regard to whether the decedent was an employee or an independent contractor. However, on the basis of the redemption proceeding record before us, there is every reason to believe that the parties settled and resolved their differences as to the matters expressly set forth in the redemption agreement.

Like other agreements, a redemption agreement might later be set aside on grounds such as mutual mistake, *Solo v Chrysler Corp (On Rehearing)*, 408 Mich 345; 292 NW2d 438 (1980). However, the burden should be on the party who seeks to avoid the agreement.

The exclusive remedy provision of the act provides:

> (1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. . . .
>
> (2) As used in this section and section 827, "employee" includes the person injured, his or her personal representatives and any other person to whom a claim accrues by reason of the injury to, or death of, the employee . . . . [MCL 418.131; MSA 17.237(131).]

In view of the exclusive remedy provision, I believe that, once a redemption agreement has been negotiated, signed, and approved, as in the case at bar, the employer should be able to expect that he will not thereafter be subject to liability in tort to the employee or his privies for the same injury. Absent unusual circumstances, as in *Bugg*, I believe that such an expectation is reasonable and in keeping with the policy and purposes of the act. Moreover, I believe it is the expectation and the intention of the Legislature.

## II

Particularly in light of the "nature of the remedy" which the act provides, I would hold in this case that the plaintiff is equitably estopped from maintaining in a subsequent wrongful death ac-

tion that her husband was not an employee. To hold otherwise, as the lead opinion does today, seriously erodes and undermines the exclusive remedy provision which is the foundation of the act.

The lead opinion also challenges the factual basis for the application of equitable estoppel (*ante,* pp 430-431). If a majority of this Court has similar doubts concerning the factual basis, then the appropriate course, I suggest, should be to remand this case to the trial court for a hearing, if deemed necessary, for further findings and a redetermination regarding this issue.

RILEY, J., concurred with GRIFFIN, J.

MALLETT, J., took no part in the decision of this case.